**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Advanced Technology Products, Inc.,<br>190 N. Mill St.<br>Milford Center, OH 43045<br><br>        Plaintiff,<br><br>    vs.<br><br>Oriental Export Corporation,<br>75AB, Government Industrial Estate, Ganesh Nagar, Charkop, Kandivali (W), Mumbai-400067, India<br><br>and<br><br>OEC USA Inc.,<br>1207 Delaware Ave,<br>Wilmington, DE 19806<br><br>        Defendants. | CASE NO.: 2:25-cv-1239<br><br><br>**COMPLAINT** |

Plaintiff Advanced Technology Products, Inc. ("ATP") for its Complaint against Defendant Oriental Export Corporation ("OEC") and OEC USA Inc. ("OEC USA," collectively with OEC, "OEC"), alleges as follows:

1.      ATP is a 100% employee-owned, Ohio company, which manufactures and distributes plastic tubing products, hoses, fittings, clamps, and other industrial accessories to automotive manufacturers in the United States.

2.      OEC is a company based in Mumbai, India, which manufactures electrical connectors, fittings, cable glands, automotive fittings, air brake tubing, and hoses, and exports those products into the United States, serving both Original Equipment Manufacturers and distributors across various industries.

1

3. OEC contracted with ATP to sell tubing products and fittings intended for use in air brake systems. The tubing products and fitting products will be referred to collectively as "tubing products." OEC represented that its tubing products would meet all applicable standards in the United States for use in air brake systems.

4. ATP subsequently sold the tubing products it purchased from OEC to customers in Ohio and throughout the United States because OEC had represented that its tubing products were compliant with the applicable standards for use in air brake systems.

5. OEC, however, sold ATP tubing products that were not compliant with the applicable standards for use in air brake systems.

6. On information and belief, OEC knew its tubing products were not compliant with the applicable standards for use in air brake systems.

7. On information and belief, OEC knowingly misrepresented that its tubing products were compliant with the applicable standards for use in air brake systems or, based on their lack of testing, had such utter disregard or recklessness for the truth of whether the tubing products were compliant, because OEC did not conduct the applicable testing and did not have a control plan to ensure that all products had a likelihood of compliance with the applicable safety standards.

8. Due to OEC's lack of testing and data as well as lack of cooperation in furnishing the required information, ATP was forced to retest OEC's tubing products through third-party labs, at its own cost, without OEC's support. From the testing data received by ATP, it was confirmed that OEC's tubing products were noncompliant and thus, the tubing products had to be recalled. ATP alerted the National Highway Transportation Safety Administration ("NHTSA") and known purchasers of OEC's tubing products of the potential noncompliance with applicable standards. As a result, ATP suffered substantial damages due to OEC's noncompliant tubing products,

including costs associated with retesting OEC's tubing products without support, refunds to ATP's customers for noncompliant tubing products, replacement costs for substitute goods, costs related to notice of noncompliance required by NHTSA, reputational harm, lost future business, including loss of business from ATP's largest customer, legal costs and other damages.

## PARTIES

9.     ATP is an Ohio citizen. ATP is a corporation registered in the State of Ohio with a principal place of business at 190 N. Mill St., Milford Center, Ohio 43045.

10.     Upon information and belief, OEC is a citizen of India. Upon information and belief, OEC is a corporation formed under the laws of India and headquartered in Mumbai. OEC's website states that its business address is "75 AB, Govt. Industrial Estate, Charkop, Near Ganesh Nagar, Kandivali (West), Mumbai - 400067, Maharashtra, India." As such, OEC's principal place of business is in India.

11.     OEC USA Inc. is a Delaware corporation. On information and belief, its address is 1207 Delaware Ave, Wilmington, DE 19806.

## ALTER EGO

12.     OEC and OEC USA are in fact the same company because they are alter egos, collectively referred to in this Complaint as OEC.

13.     Upon information and belief, OEC USA is a mere façade for OEC's operations in the United States.

14.     Upon information and belief, OEC USA is owned and controlled by the same individuals who own and control OEC.

15.     Upon information and belief, OEC USA has no employees separate from OEC, no independent business interests separate from OEC, and no independent corporate purpose from OEC.

16.     Upon information and belief, OEC USA's address at 1207 Delaware Ave, Wilmington, DE 19806, is an apartment at which no employee of OEC USA performs any work.

17.     Upon information and belief, OEC India exercises complete control over OEC USA.

18.     Upon information and belief, OEC USA is completely reliant on OEC and has no independent corporate purpose other than to serve OEC.

19.     Upon information and belief, OEC and OEC USA failed to observe corporate formalities in order to allow OEC India to exercise direct control of OEC USA's operations.

20.     Upon information and belief, OEC and OEC USA do not maintain separate corporate books or financial statements.

21.     Upon information and belief, OEC and OEC USA use the same corporate assets to sell and deliver products to customers in the United States, including ATP in Ohio.

22.     OEC USA is a façade to mask OEC business activity and substantial connections to the United States.

23.     It would be a fundamental injustice to allow OEC to avoid litigating this dispute in U.S. courts.

24.     OEC and OEC USA are alter egos and this Court should treat them as a single legal entity for purposes of jurisdiction and liability.

**JURISDICTION AND VENUE**

25.     This court has jurisdiction over these claims under 28 U.S.C. § 1332(a)(1) and (2) because this controversy is between citizens of different States and citizens of a State and a citizen or subject of foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

26.     This Court has personal jurisdiction over OEC pursuant to Ohio Rev. Code Ann. § 2307.382(A)(1), (2), & (4) because the causes of action set forth herein arise from OEC transacting business with and contracting to sell goods to ATP in Ohio and causing tortious injury in Ohio to ATP as a result of OEC's misrepresentations regarding the noncompliant tubing products in Ohio.

27.     OEC has declared under oath in a lawsuit filed in India that it has a significant business presence and commercial interests in North America.

28.     OEC purposefully availed itself of the benefits of Ohio laws, by contracting to sell goods to ATP, an Ohio company, and shipping its products into Ohio to ATP. OEC representatives also visited ATP in Ohio on at least three occasions in approximately November 2018, June 2019, and December 2024.

29.     Personal jurisdiction over OEC is also proper because it has purposefully availed itself of the opportunity to conduct substantial commercial activities in this forum. The claims asserted in the Complaint arise out of OEC's commercial activities in this forum.

30.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this venue, including OEC's sale of the non-compliant tubing products to ATP, OEC's agreement to deliver the noncompliant tubing products to ATP, and the subsequent injury to ATP as a result of the noncompliant goods.

## FACTS

31.     Since 2019, ATP has purchased approximately $5.8 million worth of tubing products from OEC. Relatedly, in June 2019, Mahesh Khedekar, visited ATP in Ohio to discuss selling tubing and fitting products to ATP for the USA market. Mahesh Khedekar had previously travelled to Ohio to visit ATP representatives in November 2018, but ATP's representatives were unable to meet with Mr. Khedekar at that time.

32.     All of OEC's tubing products were purchased by and shipped to ATP in the United States, including directly into Ohio.

33.     Between August 2022 and September 2024, ATP purchased tubing products from OEC that were not fully tested by OEC to meet applicable standards, and in some instances, did not comply with applicable standards.

34.     Exhibits 1 and 2 are a collection of invoices for the goods ordered by ATP. A table of the invoices contained in Exhibits 1 and 2 is below:

| Ex. 1, Pg. No. | OEC Invoice No. | Date (day-month-year) | Terms Attached |
|---|---|---|---|
| 1-4 | 0184/2024-25 | 14-May-2024 | Yes |
| 5-7 | 0272/2024-25 | 03-Jun-2024 | Yes |
| 8-10 | 0685/2024-25 | 02-Sep-2024 | Yes |
| 11-13 | 0635/2024-25 | 02-Sep-2024 | Yes |
| 14-19 | 0687/2024-25 | 02-Sep-2024 | Yes |
| 20-22 | 0684/2024-25 | 02-Sep-2024 | Yes |
| Ex. 2, Pg. No. | | | |
| 1-2 | 1320/2021-22 | 05-Feb-2022 | No |
| 3-4 | 0558/2022-23 | 16-Aug-2022 | No |
| 5-6 | 0782/2021-22 | 23-Sep-2021 | No |
| 7-8 | 1162/2021-22 | 04-Jan-2022 | No |
| 9-10 | 1384/2021-22 | 17-Feb-2022 | No |
| 11 | 1414/2021-22 | 22-Feb-2022 | No |
| 12-13 | 1526/2021-22 | 12-Mar-2022 | No |
| 14-15 | 1538/2021-22 | 19-Mar-2022 | No |
| 16-17 | 1588/2021-22 | 31-Mar-2022 | No |
| 18 | 0023/2022-23 | 08-Apr-2022 | No |
| 19-20 | 0083/2022-23 | 22-Apr-2022 | No |
| 21-23 | 0114/2022-23 | 04-May-2022 | No |
| 24-25 | 0115/2022-23 | 04-May-2022 | No |
| 26-29 | 0266/2022-23 | 04-Jun-2022 | No |
| 30-31 | 0267/2022-23 | 04-Jun-2022 | No |
| 32-33 | 0268/2022-23 | 04-Jun-2022 | No |
| 34-36 | 0291/2022-23 | 10-Jun-2022 | No |
| 37-38 | 0343/2022-23 | 21-Jun-2022 | No |
| 39-40 | 0353/2022-23 | 23-Jun-2022 | No |
| 41-43 | 0354/2022-23 | 23-Jun-2022 | No |
| 44-45 | 0355/2022-23 | 23-Jun-2022 | No |
| 45-46 | 0392/2022-23 | 02-Jul-2022 | No |
| 47-49 | 0413/2022-23 | 08-Jul-2022 | No |

| | | | |
|---|---|---|---|
| 50 | 0432/2022-23 | 15-Jul-2022 | No |
| 51 | 0433/2022-23 | 18-Jul-2022 | No |
| 52-54 | 0445/2022-23 | 19-Jul-2022 | No |
| 55-56 | 0508/2022-23 | 03-Aug-2022 | No |
| 57 | 0512/2022-23 | 03-Aug-2022 | No |
| 58-60 | 0557/2022-23 | 16-Aug-2022 | No |
| 61-62 | 0558/2022-23 | 16-Aug-2022 | No |
| 63-64 | 0607/2022-23 | 25-Aug-2022 | No |
| 65-66 | 0644/2022-23 | 01-Sep-2022 | No |
| 67-68 | 0645/2022-23 | 01-Sep-2022 | No |
| 69-70 | 0725/2022-23 | 17-Sep-2022 | No |
| 71-72 | 0755/2022-23 | 03-Oct-2022 | No |
| 73-74 | 0756/2022-23 | 03-Oct-2022 | No |
| 75 | 0794/2022-23 | 10-Oct-2022 | No |
| 76-78 | 0833/2022-23 | 20-Oct-2022 | No |
| 79-80 | 0835/2022-23 | 20-Oct-2022 | No |
| 81-83 | 0962/2022-23 | 22-Nov-2022 | No |
| 84-85 | 0963/2022-23 | 22-Nov-2022 | No |
| 86-87 | 0964/2022-23 | 22-Nov-2022 | No |
| 88-90 | 1032/2022-23 | 12-Dec-2022 | No |
| 91-92 | 1033/2022-23 | 12-Dec-2022 | No |
| 93-94 | 1034/2022-23 | 12-Dec-2022 | No |
| 95-96 | 1046/2022-23 | 14-Dec-2022 | No |
| 97-99 | 1069/2022-23 | 19-Dec-2022 | No |
| 100-101 | 1070/2022-23 | 19-Dec-2022 | No |
| 102-103 | 1097/2022-23 | 23-Dec-2022 | No |
| 104-105 | 1144/2022-23 | 07-Jan-2023 | No |
| 106-107 | 1201/2022-23 | 14-Jan-2023 | No |
| 108-109 | 1199/2022-23 | 14-Jan-2023 | No |
| 110-111 | 1226/2022-23 | 24-Jan-2023 | No |
| 112-113 | 1275/2022-23 | 01-Feb-2023 | No |
| 114-116 | 1352/2022-23 | 16-Feb-2023 | No |
| 117-118 | 1353/2022-23 | 16-Feb-2023 | No |
| 119-120 | 1355/2022-23 | 16-Feb-2023 | No |
| 121-122 | 1443/2022-23 | 04-Mar-2023 | No |
| 123-124 | 1445/2022-23 | 04-Mar-2023 | No |
| 125-127 | 1496/2022-23 | 14-Mar-2023 | No |
| 128-129 | 1506/2022-23 | 15-Mar-2023 | No |
| 130-133 | 1002/2023-24 | 27-Oct-2023 | No |
| 134-136 | 1391/2023-24 | 05-Feb-2024 | No |
| 137-139 | 1748/2023-24 | 31-Mar-2024 | No |

35.     The seven purchase orders with attached terms have identical terms and conditions (the "PO Terms"). (Ex. 1).

36.     The PO Terms have a choice of law selecting Delaware law. (Ex. 1, at 4, PO Terms ¶ 15).

37.     The remaining invoices do not include the same terms and conditions. (Ex. 2).

38.     ATP ordered various sizes and colors of tubing products from OEC. (Ex. 1 and 2).

39.     The PO Terms include an express warranty "that the Products will perform substantially in accordance with Seller's published specifications (or other applicable specifications as agreed upon in writing by Seller)." (Ex. 1., at 4, PO Terms ¶ 11).

40.     Pursuant to the PO Terms, ATP and OEC agreed that the tubing products would meet industry standard specifications, including the relevant requirements set by SAE International and the Federal Motor Vehicle Safety Standards (FMVSS).

41.     At all relevant times, OEC represented to ATP that its tubing products met all applicable standards and specifications.

42.     OEC's website states under "Certifications," that its tubing product "[m]eets SAE Specification J844" and "[m]eets DOT FMVSS 49CFR571106," i.e., FMVSS 49 C.F.R. §571.106 (Ex. 3).

43.     OEC's tubing products did not meet the applicable specifications for air brake tubing products set by SAE International or the FMVSS.

44.     OEC also warranted that its tubing products would "be free from defects in material and workmanship." (Ex. 1, at 4, PO Terms, ¶ 11).

45.     OEC's tubing products, however, were not free from defects in material and workmanship.

46.     That OEC's tubing products were untested (by it) and failed to meet applicable specifications were not ascertainable upon inspection by ATP.

47.     Until one of ATP's clients alerted ATP to a potential noncompliance issue, ATP had no knowledge that OEC's tubing products failed to meet all applicable specifications.

48.     Because OEC's tubing products failed to meet the applicable specifications, OEC's tubing products did not meet the safety standards for tubing products used in air brake systems in the United States.

49.     In early September 2024, ATP's customers informed ATP that they discovered potential defects in OEC's tubing products.

50.     ATP immediately informed OEC of the potentially defective tubing products.

51.     An OEC representative, Mahesh Khedekar, traveled to Stoughton, Wisconsin in September 2024, to meet with ATP representatives, and others, including ATP's customers who had complained about OEC's products, regarding the noncompliant tubing products issue.

52.     In December 2024, Mahesh Khedekar, a representative of OEC, met with ATP in Ohio to discuss testing for the tubing products, participating, or remedy.

53.     OEC ultimately refused to remedy the noncompliant tubing products.

54.     OEC refused to repair or replace the noncompliant tubing products in a timely manner.

55.     Rather, OEC obfuscated and delayed by seeking additional testing and failing to provide timely responses to ATP's requests for information.

56.     OEC attempted to mislead ATP by providing test results for OEC's tubing products from different lot codes and manufacturing dates than the noncompliant tubing products.

57.     The purpose of the contract was for OEC to deliver compliant tubing products to ATP, and OEC knew or should have known that ATP and ATP's customers would use the tubing products for air brake systems shortly after receipt of the tubing products. Despite this knowledge, OEC failed to deliver compliant tubing products.

58.     The PO Terms limited remedy is not enforceable because it fails its essential purpose. Del. Code Ann. tit. 6 § 2-719(1)(a), (2).

59.     The PO Terms limitation of liability is not enforceable for several reasons, including because it is vague and ambiguous.

60.     OEC's refusal to remedy the noncompliant tubing products pursuant to the PO Terms caused the limited remedy to fail of its essential purpose.

61.     ATP has suffered damages, including the costs related to investigating the noncompliant tubing products, mitigating the noncompliant tubing products, recalling the noncompliant tubing products from customers and refunding ATP's customers, lost future sales due to the noncompliant tubing products, including the loss of ATP's largest customer, and costs related to compliance with NHTSA regulations for reporting noncompliant products. These damages are no less than **$3,700,000**.

## COUNT I
### (Breach of Contract Against OEC Under Delaware Law)

62.     ATP and OEC had multiple contracts for the sale of goods as evidenced by the numerous invoices and purchase orders. (Ex. 1).

63.     As a sale of goods, the contract terms are those applied by the UCC (Del. Code Ann. tit. 6 § 2-100 *et seq.*) and the PO Terms agreed to by ATP and OEC.

64.     ATP and OEC entered into this contract with ATP in Ohio.

65. OEC invited ATP to enter into this contract by sending communications into Ohio advertising its tubing products.

66. OEC agreed to deliver its tubing products to ATP in the United States, and more specifically, Ohio.

67. OEC knew that the purpose of the contract was to provide ATP with tubing products in Ohio meeting the applicable standards for air brake systems.

68. As part of the contract, OEC represented to ATP that its tubing products met the applicable standards for air brake systems.

69. ATP performed all its obligations under the contract.

70. OEC breached the contract by failing to deliver tubing products that met the applicable standards for air brake systems.

71. OEC breached the contract by failing to remedy the noncompliant tubing products in a timely manner.

72. ATP has suffered significant damages as a direct proximate result of OEC's breach of contract.

73. ATP's damages were foreseeable by the parties at the time of the agreement to purchase OEC's tubing products.

74. As such, OEC is liable to ATP for damages for breach of contract under Delaware law, including consequential damages.

## **<u>COUNT II</u>**
### **(Breach of Contract Against OEC Under Ohio Law)**

75. ATP and OEC had multiple contracts for the sale of goods as evidenced by the numerous invoices and purchase orders. (Ex. 2).

76.     As a sale of goods without specific attached terms, the contract terms are those applied by the UCC (Ohio Rev. Code Ann. § 1302 *et seq.*).

77.     With respect to Count II, Plaintiff realleges paragraphs 64 to 73 of the Complaint as if fully restated herein.

78.     As such, OEC is liable to ATP for damages for breach of contract under Ohio law, including consequential damages.

<u>**COUNT III**</u>
**(Breach of Express Warranty Against OEC Under Delaware Law)**

79.     OEC made an express promise that its tubing products would meet the applicable standards for air brake systems.

80.     OEC knew that this express warranty was essential to the contract because ATP intended to sell the tubing products to customers that would use the tubing products for air brake systems.

81.     OEC describes its tubing products as meeting the applicable standards, including SAE International and FMVSS.

82.     OEC breached the express warranty by failing to deliver tubing products to ATP that met the applicable standards for air brake systems.

83.     OEC refused to remedy the breach of express warranty.

84.     OEC's limited remedy in the PO Terms causes the contract to fail its essential purpose because OEC did not repair or replace the noncompliant tubing products in a timely manner.

85.     OEC's breach of the express warranty was a proximate cause of ATP's damages.

86.     ATP's damages were foreseeable by the parties at the time of the agreement to purchase OEC's tubing products.

87.     As such, OEC is liable to ATP for damages for breach of express warranty under Delaware law, including consequential damages.

## COUNT IV
### (Breach of Express Warranty Against OEC Under Ohio Law)

88.     With respect to Count IV, Plaintiff realleges paragraphs 79 to 86 of the Complaint.

89.     As such, OEC is liable to ATP for damages for breach of express warranty under Ohio law, including consequential damages.

## COUNT V
### (Breach of Implied Warranty of Merchantability Under Delaware Law Against OEC)

90.     Delaware law imposes an implied warranty of merchantability. Del. Code Ann. tit. 6 § 2-314.

91.     OEC is a merchant with respect to the sale of tubing products for use in air brake systems.

92.     OEC sold the noncompliant tubing products to ATP.

93.     OEC's tubing products were not merchantable at the time of the sale because the tubing products failed to meet the applicable standards for use in air brake systems.

94.     As such, OEC breached the implied warranty of merchantability.

95.     ATP suffered damages as a proximate result of OEC's noncompliant tubing products.

96.     ATP's damages were foreseeable by the parties at the time of the agreement to purchase OEC's tubing products.

97.     ATP provided OEC with timely notice of the noncompliant tubing products.

98.     OEC failed to remedy the noncompliant tubing products.

99.     As such, OEC is liable to ATP for damages for breach of the implied warranty of merchantability under Delaware law, including consequential damages.

**COUNT IV**
**(Breach of Implied Warranty of Merchantability Under Ohio Law Against OEC)**

100.    Ohio law imposes an implied warranty of merchantability. Ohio Rev. Code Ann. § 1302.27

101.    With respect to Count IV, Plaintiff realleges paragraphs 91 to 98 of the Complaint.

102.    As such, OEC is liable to ATP for damages for breach of the implied warranty of merchantability under Ohio law, including consequential damages.

**COUNT V**
**(Breach of Implied Warranty of Fitness For Particular Purpose Against OEC Under Delaware Law)**

103.    Delaware law imposes an implied warranty of fitness for a particular purpose. Del. Code Ann. tit. 6 § 2-315.

104.    OEC knew that ATP intended to sell the tubing products to customers for use in air brake systems.

105.    OEC knew that ATP was relying upon OEC's skills and judgment to furnish tubing products that met all the applicable standards for tubing products used in air brake systems.

106.    Despite OEC's knowledge, OEC delivered tubing products that did not meet the applicable standards for use in air brake systems.

107.    The noncompliant tubing products caused ATP damages.

108.    ATP's damages were foreseeable by the parties at the time of the agreement to purchase OEC's tubing products.

109.    As such, OEC breached the implied warranty of fitness for particular purpose.

110.    OEC failed to remedy the noncompliant tubing products.

111.    As such, OEC is liable to ATP for damages for breach of the implied warranty of fitness for particular purpose under Delaware law, including consequential damages.

14

**COUNT VI**
**(Breach of Implied Warranty of Fitness For Particular Purpose Against**
**OEC Under Ohio Law)**

112.     Ohio law imposes an implied warranty of fitness for a particular purpose. Ohio Rev.

Code Ann. § 1302.28.

113.     With respect to Count VI, Plaintiff realleges paragraphs 104 to 110 of the

Complaint.

114.     As such, OEC is liable to ATP for damages for breach of the implied warranty of

fitness for particular purpose under Ohio law, including consequential damages.

**COUNT VII**
**(Fraud in the Inducement Against OEC)**

115.     OEC misrepresented on its website and to ATP that its tubing products met the

applicable standards in the United States for use in air brake systems.

116.     OEC's misrepresentation that the tubing products met applicable standards for use

in air brake systems was material to the sale of the tubing products systems to ATP. ATP would

not have otherwise contracted with OEC to purchase the tubing products if it knew OEC's tubing

products were noncompliant and failed to meet applicable standards for use in air brake systems.

117.     A reasonable person under like circumstances would not have purchased the tubing

products from OEC if they knew the tubing products were noncompliant and failed to meet

applicable standards.

118.     On information and belief, OEC knew that its representation that the tubing

products met the applicable standards for use in air brake systems was false or had such utter

disregard or recklessness for the truth or falsity that a factfinder may infer that the representation

was knowingly false.

119. On information and belief, OEC intended to mislead ATP into relying on the representation that its tubing products met the applicable standards for use in air brake systems because it wanted to sell the tubing products to ATP and knew that ATP would only purchase tubing products that met the applicable standards for use in air brake systems.

120. ATP justifiably relied on OEC's misrepresentations because OEC purports to be a global manufacturer of the tubing products used in air brake systems, ATP relied upon OEC's skills and judgment to furnish tubing products that met all the applicable standards for tubing products used in air brake systems, and ATP and OEC had an ongoing commercial relationship, whereby ATP has previously purchased the tubing products from OEC.

121. ATP's reliance on OEC's misrepresentations proximately caused ATP's injury.

122. As such, OEC is liable to ATP for fraud in the inducement.

123. OEC is liable to ATP for damages caused by OEC's fraud in the inducement, including consequential damages, punitive damages, and attorneys' fees and costs.

**WHEREFORE**, ATP respectfully requests that this Court grant it judgment against OEC for all damages caused by OEC's delivery of noncompliant tubing products and refusal to remedy the noncompliance. The specific amount of ATP's damages, including consequential damages, will be proven at trial, but is no less than **$3,700,000**, plus interest thereon to the date of payment. ATP also seeks its costs and attorneys' fees, punitive damage, and requests any other relief or order that the Court deems appropriate.

## <u>JURY TRIAL DEMANDED</u>

ATP demands a trial by jury on all triable issues of fact.

Respectfully submitted,


*Rand L. McClellan*
Rand L. McClellan (0079266)
rmcclellan@bakerlaw.com
Christopher K. Riedel (0101707)
criedel@bakerlaw.com
BAKER & HOSTETLER LLP
200 Civic Center Drive
Suite 1200
Columbus, OH 43215-4138

*Attorneys for Plaintiff*
*Advanced Technology Products, Inc.*