**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Advanced Technology Products, Inc.,<br><br>                   Plaintiff,<br><br>    vs.<br><br>Oriental Export Corporation, and<br>OEC USA, Inc.,<br><br>                  Defendants. | Case No. 2:25-cv-1239<br><br>Chief Judge Sarah D. Morrison<br><br>Magistrate Judge Chelsey M. Vascura |

**STIPULATION CONCERNING PROTOCOL FOR PRODUCTION OF DOCUMENTS
AND ELECTRONICALLY STORED INFORMATION**

Plaintiff Advanced Technology Products, Inc. ("Plaintiff") and Defendants Oriental Export Corporation and OEC USA, Inc. ("Defendants," and together with Plaintiffs, the "Parties") hereby agree to this Stipulation Concerning Protocol for Production of Electronically Stored Information ("ESI Protocol") in the above-captioned action ("Action").

WHEREAS, counsel for the Parties have met and conferred regarding discovery of Documents and electronically stored information ("ESI") in this Action and have entered into this ESI Protocol to facilitate the just, speedy, and efficient conduct of discovery of ESI that is proportional to the needs of the case and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without the Court's intervention.

THEREFORE, the Parties stipulate and agree as follows:

## I.     DEFINITIONS

a.     "Custodial Documents" includes a custodian's (a) exclusive e-mail mailbox(es) the custodian uses for work purposes; (b) other ESI or papers or hard-copy Documents that relate to

the custodian's work residing in exclusive sources available to such custodian only; and (c) if the custodian uses chats or other instant or direct messages for work purposes, such messages. Custodial Documents do not include ESI stored in centralized data sources such as shared drives, group emails, or group folders. Custodial Documents also do not include any Structured Data, such as data stored in data warehouses, databases, or similar locations.

b.      "Documents" means any recorded information—including, but not limited to, any writings, drawings, graphs, charts, photographs, sound recordings, images, memoranda, correspondence and other data, data records, or data compilations—stored in any medium from which information can be obtained, whether as ESI or in hard copy.

c.      "Electronically Stored Information" or "ESI," as used herein, means information or data of any kind, stored electronically.

d.      "Load File" means an electronic file containing information identifying a set of paper-scanned images and/or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A Load File will also contain certain data relevant to the individual Documents, including, where reasonable and possible, extracted and user created Metadata as specified herein and in Appendix A.

e.      "Metadata" means data and information that describes other data and includes without limitation (1) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (2) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. Except as otherwise provided herein (e.g., Sections 6 and

2

7.B), this ESI Protocol does not create a duty on a Party to create Metadata that is not kept in the ordinary course (excluding production-related Metadata, such as Bates numbers) and reasonably captured and produced.

f. "Named Custodians" means the individual custodians to be identified by the Parties for whom discoverable relevant Custodial Documents are most likely to exist.

g. "Native File" means a copy of ESI in the form that it is stored by the Party.

h. "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

i. "Parties" or "Party" means, collectively or individually as the case may be, Plaintiffs, Defendant, and any person or entity subsequently added or joined in this Action after the date of this ESI Protocol, including, but not limited to, the Parties' officers, directors, employees, and agents.

j. "Producing Party" means any Party or third-party who produces Documents or ESI pursuant to any discovery request, subpoena, or otherwise in this Action.

k. "Receiving Party" means a Party or third-party who requests Documents or ESI pursuant to any discovery request, subpoena, or otherwise in this Action.

## II. GENERAL PROVISIONS

a. **Applicability.** Unless otherwise agreed to by the Parties, this ESI Protocol governs the production of Documents and ESI in this Action. To the extent any Producing Party reproduces Documents or ESI previously produced in this or another matter, that Party may reproduce such Documents or ESI in the manner in which they were originally produced. No Party is obligated to reformat any such prior production in accordance with the production specifications in this ESI

Protocol, provided that the production is in a reasonably useable format. The Parties reserve the right to object to a non-conforming format. Nothing in this ESI Protocol is intended to be an exhaustive list of discovery obligations or rights of the Parties under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of Ohio ("Civil Local Rules"), any other applicable state and federal statutes or rules, or orders of this Court.

b. **Proportionality.** The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) is intended to apply to every aspect of this ESI Protocol and shall be applied to the production of Documents, including ESI. The Parties agree to confer should proportionality become an issue and both Parties reserve the right to challenge that any aspect of the production of ESI is not proportional to the needs of the case.

c. **Limitations and Non-Waiver.** The Parties and their attorneys do not intend by this ESI Protocol to waive their rights to any protection or privilege, including the attorney-client privilege, the work-product doctrine, and any other privilege or immunity that may be applicable. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this ESI Protocol shall be construed to affect the admissibility of Documents, information, and ESI. All objections to the discoverability or admissibility of any Documents or ESI are preserved and may be asserted at any time. This ESI Protocol does not govern the appropriate scope of discovery under Rule 26(b)(1), custodian selection and search parameters, or impose any obligations beyond those in the Federal Rules of Civil Procedure.

d. **Authenticity and Admissibility.** Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of any Document or data. All objections to the

4

authenticity or admissibility of any Document or data are preserved and may be asserted at any time.

e. **Modification by Agreement.**  Any practice or procedure set forth herein may only be modified by written agreement of the Parties. Any Party added or joined to this Action and any Party to actions that may be consolidated into or coordinated with this Action after the date of this ESI Protocol who seeks to deviate from the ESI Protocol set forth herein shall obtain leave of Court to do so unless all Parties otherwise consent in writing.

f. **Modification by Court Order.**  Nothing in this ESI Protocol waives the right of any Party to petition the Court for an order modifying the ESI Protocol's terms upon good cause shown; provided, however, that counsel for such Party must first meet and confer with counsel for the opposing Party, and the Parties shall use reasonable best efforts to negotiate an amendment of this ESI Protocol prior to seeking relief from the Court.

g. **Confidential or Highly Confidential Materials/Clawback.**  Nothing herein shall contradict or otherwise prejudice the Parties' rights and obligations under any stipulated protective order concerning the confidentiality of discovery material ("Stipulated Protective Order") entered into by and between the Parties in this Action. If there is any inconsistency between this ESI Protocol and the Stipulated Protective Order, the terms of the Stipulated Protective Order shall govern. This ESI Protocol shall be interpreted to provide the maximum protection allowed by Fed. R. Evid 502(d) and Fed. R. Evid 502(e); the provisions of Fed. R. Evid 502(b) are inapplicable to any productions under this ESI Protocol. A Producing Party seeking to claw back Privileged Material shall follow the procedures outlined in the Stipulated Protective Order and the parties shall also follow the procedures in Appendix B.

h. **Good-Faith Efforts.** The Parties shall make good-faith efforts to comply with and resolve any disputes concerning compliance with this ESI Protocol. No Party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred with other affected Parties.

## III. PRESERVATION

a. The Parties agree that they shall continue to take reasonable steps to preserve potentially relevant Documents and ESI in accordance with their obligations under the Federal Rules of Civil Procedure and other applicable laws.

b. The Parties further acknowledge a litigation hold is in place and both Parties are taking reasonable and proportional steps to preserve potentially relevant information. The Parties are required to act in good faith and shall not transfer ESI to another form solely for the purpose of increasing the burden of discovery for other parties.

c. The Parties agree that by preserving Documents or providing information about the Parties' preservation efforts, the Parties are not conceding that such material is responsive or discoverable.

d. If ESI is inaccessible to a Producing Party, the Producing Party will inform the Requesting Party of that fact.

e. If a Producing Party asserts that accessing, preserving, or producing certain ESI would be overly burdensome, the Parties shall meet and confer before presenting the issue to the Court for resolution. If the Parties do not agree to resolve the dispute, the Producing Party shall coordinate an informal discovery conference with the Magistrate Judge. Any subsequent motion for a protective order shall be accompanied by a competent declaration affirming the movant has complied with the meet-and-confer requirements of this ESI Protocol.

f. If a Receiving Party, following a production, seeks additional ESI (only upon showing particularized need) or the production of ESI in a different format upon an assertion that the ESI produced is not reasonably useable, the Parties shall meet and confer regarding whether the information can be reasonably produced in a different format and/or whether the Producing Party agrees to the Receiving Party's request for additional ESI. If the Parties do not agree to resolve the dispute, the Receiving Party shall coordinate an informal discovery conference with the Magistrate Judge. Any subsequent motion to compel shall be accompanied by a competent declaration affirming the movant has complied with the meet-and-confer requirements of this ESI Protocol.

g. The Parties agree that the following data categories shall be deemed inaccessible and therefore, not discoverable, and need not be preserved:

    i. Deleted, slack, fragmented, or other data only accessible by forensics.

    ii. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

    iii. Data in Metadata Fields that are frequently updated automatically, such as last opened date.

    iv. Backup and archive data that are substantially duplicative of data that are more accessible elsewhere.

    v. Server, system, or network logs.

    vi. Data remaining from systems no longer in use that is unintelligible on the systems in use and where there is no reasonable way to convert the data to a universal format such as CSV, XLSX, TXT, SQL, XML, etc.

h.  The Parties agree that they need not preserve email data (e.g., Microsoft Outlook data) in more than one location where it is accessible or stored (e.g., on physical server, on local hard drive, on mobile-device drive) so long as it is preserved in one of the locations.

## IV.  IDENTIFICATION OF RESPONSIVE DOCUMENTS

a.  The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce relevant ESI.

b.  The Parties will provide a list of proposed Named Custodians and centralized data sources (i.e., non-custodial ESI) from which they are collecting ESI for production in the Action. The Parties will work in good faith to identify, discuss, agree upon, and revise, if necessary, the Named Custodians and sources of non-custodial ESI to avoid an unduly burdensome production or retrieving a large quantity of non-responsive ESI. Each Party shall make a reasonable and diligent effort to search for and collect reasonably accessible and responsive (1) Custodial Documents from the Named Custodians and (2) ESI from the agreed-to sources of non-custodial ESI.

c.  If a Receiving Party believes additional custodians should be searched at any point in the discovery process, the Parties shall meet and confer as necessary. The Parties each reserve all objections to gathering and producing ESI for additional custodians, including an objection on the basis that the ESI should have been sought earlier, but agree to meet and confer in good faith regarding any such request.

d.  The Parties agree to exchange lists of sources of non-custodial ESI via email. If a Receiving Party believes additional non-custodial ESI should be searched, the Parties shall meet and confer as necessary.

8

f.      The Producing Party shall provide a list of search terms and date ranges that the Producing Party intends to apply to the collected materials to cull the information for review; the Parties shall meet and confer as necessary regarding each Party's search terms proposal. If the Receiving Party identifies additional reasonable search terms following a review of a Producing Party's production (including, but not limited to, terms of art or abbreviations used by the Producing Party), the Receiving Party may propose the addition of such search terms, and the Parties shall meet and confer as necessary regarding the same. The Parties each reserve all objections to running additional search terms against the ESI, including an objection that additional search terms ESI should have been sought earlier, but agree to meet and confer in good faith regarding any such request.

g.      In the event of a dispute or disagreement regarding search terms and/or Named Custodians, the Parties will meet and confer in a good faith effort to resolve such dispute or disagreement consistent with applicable rules. If the Parties are unable to reach an agreement on the dispute, the party requesting additional search terms and/or custodians may seek judicial intervention in accordance with the Court's rules.

h.      By entering into this stipulation, no Party waives its right to seek assistance from the Court on any matter relating to the scope, handling, or production of ESI not specifically addressed herein. Nothing herein is intended to waive any right of a Party to seek entry of a protective order, cost-shifting order, or other order requiring the Receiving Party to pay costs if the Parties are unable to reach agreement.

i.      **Filtering.**  Common system and program files, defined by the National Software Reference Library ("NSRL List"), need not be processed, reviewed or produced. If a Producing Party proposes to apply other filters to further limit ESI that is collected for processing and review

9

(e.g., filters that identify system files, non-user generated files, or zero-byte files), the Producing Party shall advise the Receiving Party and they shall meet and confer regarding the use of such additional proposed filters.

j.   **De-Duplication.**   De-duplication should occur both vertically within each custodian and horizontally across custodians. De-duplication shall be done in a way that preserves: (1) information on blind copy (bcc) recipients of deduplicated emails; and (2) the identity of other Custodians whose files contained copies of Documents and ESI that were removed as a result of the deduplication process. However, hard-copy Documents shall not be deduplicated against ESI, "loose" electronic Documents shall not be deduplicated against attachments to email, and attachments to email shall not be deduplicated unless all Documents in family, including the parent email, are exact duplicates.

k.   **Metadata Fields.**   Absent exceptional circumstances, each of the Metadata and coding fields set forth in Appendix A, shall be extracted and produced for hard copy Documents and ESI to the extent they exist. The Parties are not obligated to populate manually any of the fields in Appendix A if such fields cannot be extracted automatically from a Document using standard processing software, with the exception of the following fields: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Confidentiality Designation ("Confidential," "Highly Confidential," or "Null"), (6) Custodian, (7) NativeLink[1], and (8) Source, which may be populated by the party or the party's vendor. Any Metadata Fields for redacted Documents that would reveal privileged information shall be excluded.

l.   **Extracted Text and OCR Text.**   In the case of ESI, an extracted text file should be provided for each produced Document, along with its corresponding TIFF image file(s) and the

---

[1] In the case of natively-produced ESI.

associated Metadata. The file name of each extracted text file should be identical to that of the beginning Bates number of its corresponding produced Document, followed by .txt. File names should not contain any special characters or embedded spaces. The text of Native Files should be extracted directly from the Native File. In the case of hard copy Documents, a single Optical Character Recognition ("OCR") text file shall be provided in lieu of extracted text for each produced Document. OCR text files shall also suffice in place of extracted text when a produced Document has been redacted. Finally, when extracted text is not available in a Native File, an OCR tool should be used prior to production to extract available text so that the record is searchable.

## V. PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

a. The following production specifications apply to Documents that existed in paper format prior to production ("Hard Copy Documents"). Documents that originated as paper, but which were scanned and maintained electronically by a Party prior to inception of this Action shall be produced in accordance with Part VII of this ESI Protocol.

b. The Parties agree to produce Hard Copy Documents in the formats described below, to the extent reasonably practicable and not unduly burdensome. These formats are deemed to be productions in reasonably usable form. If a Producing Party intends to produce any Hard Copy Documents in any manner other than as specified herein, the Producing Party shall notify the Receiving Party of its intent, including production format (e.g., produced as paper, made available for inspection). If the proposed production format is not acceptable to the Receiving Party, the Parties shall meet and confer to determine a mutually acceptable production format for such Hard Copy Documents.

c. **TIFFs.** Hard Copy Documents should be scanned as single-page, black-and-white, Group IV compression TIFF images using a print setting of least 300 dots per inch (DPI). Bates

numbers, confidentiality designations (in accordance with any Stipulated Protective Order), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

d.     **Unitizing Documents.**  The Parties shall undertake reasonable efforts to ensure that, in scanning paper Documents, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (i.e., paper Documents should be logically unitized). For example, Documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first Document in the container. The back cover of the container should be produced immediately after the last Document in the container.

e.     **Parent-Child Relationships.**  The Parties agree that if any part of a Hard Copy Document or its attachments is responsive, the entire Document and attachments shall be produced, except for any attachments that may be withheld or redacted on the basis of any privilege or work-product or other protection. The Parties shall take reasonable steps to ensure that parent-child relationships within a Document family (the association between an attachment and its parent Document) are preserved. The child-Document(s) should be produced consecutively, i.e., immediately after the parent-Document. Each Document shall be produced with the production number for the first and last page of that Document in the "BegBates" and "EndBates" fields of the Data Load File and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the Document family.

f.     **OCR.**  Hard Copy Documents shall be run through OCR software, and the full text shall be provided on a Document-level in an appropriately formatted text file (.txt) that is named

to match the first Bates number of the Document. Text files should be provided in a "Text" folder. To the extent that a Document is redacted, the text files should not contain the text of the redacted portions.

g.      **Unique IDs.**  Each TIFF image should have a unique filename that corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production or as soon as practicable thereafter. Bates numbers will be unique across the entire production and prefixes will be consistent across all Documents a Party produces in the Action.

h.      **Data Load Files.**  Hard Copy Documents should be provided with an Opticon Cross-Reference File and Concordance Data Load File using standard Concordance delimiters:

i.      Field Separator: ASCII character 20 ("¶");

ii.     Quote: ASCII character 254 ("þ"); and

iii.    New Line: ASCII character 174 ("®").

iv.     Concordance-compatible image and Data Load Files should be provided in a "Data" folder.

i.      **Metadata.**  Each of the Metadata and coding fields set forth in Appendix A shall be produced for that Hard Copy Document to the extent reasonably available.

j.      **Color.**  Hard Copy Documents containing color need not be produced in color in the first instance, provided, however, that the Producing Party shall retain a copy of produced Hard Copy Documents in color. However, if good cause exists for the Receiving Party to request production of certain Documents in color, the Receiving Party may request production of such

13

Documents in color by providing a list of the Bates numbers of Documents it requests to be produced in color format. The Producing Party shall not unreasonably deny such requests.

## VI. PRODUCTION FORMAT FOR ELECTRONICALLY STORED INFORMATION

a. The Parties agree to produce ESI in the formats described below. These formats are deemed to be productions in reasonably usable form. If any Party contends that particular Documents or ESI warrant a different format, the Parties will meet and confer to determine a mutually acceptable production format for such Documents.

b. **Structured Data.** The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production in traditional production formats (e.g., TIFF). If a response to a discovery request requires the production of ESI contained in a database or other structured-data format ("Structured Data "), the Parties agree to meet and confer in good faith regarding an appropriate production format including, if necessary and possible, parameters for querying the database or relevant system for discoverable information and methods for generating a report in a reasonably usable and exportable electronic file (e.g., Excel, CSV, or SQL format). To the extent available and reasonably accessible, the first line in the Structured Data Report will show the column headers for each field of data included in the Structured Data Report.

c. **Non-structured Data.** ESI that is not Structured Data should be produced as single-page, black-and-white, Group IV TIFF images using at least 300 DPI, unless produced in native format, as described below. To the extent possible through an automated process, the Document's original orientation should be maintained (i.e., portrait-to-portrait and landscape-to-landscape). In the event the original orientation of Documents in a production appears to be altered (e.g., emails are inverted or sideways), the Receiving Party may request the reproduction of those

14

Documents in their original orientation. Bates numbers, confidentiality designations (in accordance with the Stipulated Protective Order), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

d.      **Extracted Text Files.**  The full text of Native Files should be extracted directly from the Native File (not OCR) and should be delivered in an appropriately formatted text file (.txt) that is named to match the first Bates number of the Document. Text files should be provided in a "Text" folder. To the extent that a Document is redacted, the Document should undergo OCR after the text has been redacted in order to remove the redacted text.

e.      **Unique IDs.**  Each image should have a unique filename that corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production or as soon thereafter as practicable. Bates numbers will be unique across the entire production and prefixes will be consistent across all Documents a party produces in this Action. Further, the Parties shall undertake reasonable efforts to ensure that distinct Documents stored as ESI should not be merged into a single record, and single Documents stored as ESI should not be split into multiple records (*i.e.*, Documents stored as ESI should be logically unitized).

f.      **Parent-Child Relationships.** Parent-child relationships between Documents that have been maintained in the ordinary course of business should be preserved. For example, if a Party is producing an email with its attachments, the attachments should be processed in order behind the e-mail, except attachments withheld on privilege grounds, which will be indicated on

15

the associated privilege log and the withheld attachment will be replaced with a slip sheet stating "Document withheld for privilege."

g.　　**Metadata.**  The Parties agree that Metadata will be produced for all produced ESI, whether produced in native format or as TIFF images. Appendix A sets forth the Metadata Fields that shall be produced to the extent that Metadata exists for a particular Document. Metadata Fields for Documents that are partially redacted for privilege that do not contain privileged information should still be produced. Nothing herein shall require any Party to create or produce Metadata that does not exist or is not reasonably or technically accessible.

h.　　**Native Format.**  The following items of ESI shall be produced in Native File format: spreadsheet-application files (e.g., MS Excel, Tab Separated Value (.tsv), Comma Separated Value (.csv), personal databases (e.g., MS Access), multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), and presentation files and/or presentation application files (e.g., MS PowerPoint), with any speaker notes and any other similar text produced with the presentation slides. The processed native for all spreadsheets (i.e., MS Excel, .CSV, or similar), and electronic information containing audio or video components should be produced and linked to the database by the Metadata Field "NativeLink." Where Native Files are produced in lieu of TIFF images, each Native File will be assigned a unique Bates number. The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in native format. The placeholder will be branded with the production number in the lower right-hand corner and the phrase "PRODUCED IN NATIVE FORMAT" branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

16

i.      **Redaction of Native Files.**  If a native spreadsheet is redacted, the Producing Party shall redact the Native File or, if such redaction is not practicable, produce TIFF images with burned-in redactions in lieu of a Native File and TIFF placeholder image, provided the TIFF images are reasonably usable.

j.      **Redaction of TIFF images.**  If redacting TIFF images, the Producing Party shall make reasonable efforts to cause such images to legibly present all information in a Document. To the extent redacted information is not reasonably usable, the Receiving Party may request that it be produced as a redacted Native File. If good cause exists, the Receiving Party may ask the Producing Party to manually undertake the foregoing for certain Documents identified by Bates number by the Receiving Party to the extent the Document was originally produced with concealed information. The Producing Party shall not unreasonably deny such a request.

k.      **Request for Native Files.**  Other than as specifically set forth above, a Producing Party need not produce Documents in native format. If good cause exists for the Receiving Party to request production of certain Documents in native format, the Receiving Party may request production in native format by providing a list of the Bates numbers of Documents it requests to be produced in Native Format. The Producing Party shall not unreasonably deny such requests. Producing Party shall produce an overlay to ensure that the "NativeLink" entry in the Data Load File indicates the relative file path to each Native File in such production, and all Extracted Text and applicable Metadata Fields.

l.      **Hidden Content.** To the extent that ESI was saved with hidden content, such as comments or tracked changes, the ESI shall be imaged showing that hidden content, to the extent the Producing Party can practicably do so using an automated process. If ESI containing hidden content cannot be imaged to show hidden text, it will be produced in native format.

m. **Password-Protected Files.** The Parties agree that they will take reasonable steps to unencrypt and index any password-protected Documents or other encrypted containers prior to applying search terms, TAR, or other filtering methodologies. To the extent security protection for such Documents and ESI cannot be successfully processed despite reasonable efforts, the Producing Party must notify the Receiving Party of the number of Documents affected for each custodian and agree to meet and confer should the Receiving Party request additional information about such files.

n. **Embedded Documents.** Non-image files embedded within Documents, such as spreadsheets within a PowerPoint, will be extracted as separate Documents and treated like attachments to the Document in which they were embedded. The Bates number of the source file from which the embedded file is extracted must be provided as Metadata associated with the embedded file, as described in Appendix A. Graphic objects embedded within Documents or emails, such as logos, signature blocks, and backgrounds need not be extracted as separate Documents. Hyperlinked documents and modern attachments will not be treated as conventional attachments for purposes of preserving a family relationship for production. The Producing Party will consider reasonable requests for production of hyperlinked documents, should it be feasible, on a case-by-case basis.

o. **Data Load Files.** Documents should be provided with an Opticon Cross-Reference File and Concordance Data Load File using standard Concordance delimiters:

    i.    Text Delimiter AKA "Quote" – "þ", Hex (FE), Unicode (U+00FE); Decimal (254) 2;

    ii.    Field Separator AKA "Comma" – "", Hex (14), ASCII character 20 ("¶");

    iii.    Unicode (U+0014), Decimal (20);

18

iv.        Quote: ASCII character 254 ("þ"); and

v.        New Line: ASCII character 174 ("®").

p.      All rows will contain the same number of delimiters and fields. The multi-value field delimiter must be consistent across all fields. For example, if the CC field contains semi-colons between email addresses, the Tag field should also contain semi-colons. Concordance-compatible image and Data Load Files should be provided in a "Data" folder. Parties have the option to exchange sample Load Files. If this exchange occurs, the Receiving Party will have 14 days to respond with Load File change requests. Nothing in this ESI Protocol will limit the Parties from discussing Load File changes throughout the course of the Action.

q.      **Email Threading**. Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic Document collection. The Parties reserve the right to use email threading through a commercially reasonable eDiscovery software (e.g., Relativity) to reduce the overall amount of ESI and Documents produced and use email thread suppression to avoid review and production of information contained within an existing email thread in another Document being reviewed and produced. Any Party who uses email threading to reduce the amount of ESI produced shall provide a written description of the threading process they, or their eDiscovery vendor, is using to confirm that all related communications in a particular thread are being captured for review.

r.      **Production of Audio and Video Recordings.**  The Parties must meet and confer before producing audio and video recordings other than in their native format.

s.      **Production of Transcripts.**  If deposition or other transcripts are responsive, the Parties should meet and confer to determine a mutually agreeable format for producing the transcripts.

t.    **Custodian or Originating Source.**  The custodian must be identified in the custodian field of the database Load Files. Documents collected from a natural person should be produced in such fashion as to identify the natural person. Documents collected from non-custodial sources, such as shared files, storage locations, or drives, should be produced in such a fashion as to identify the department, group, entity, or facility from which the Documents were collected. A Producing Party shall make reasonable efforts use a uniform description of a particular custodian across productions.

u.    **Color.**  Documents not produced in native format containing color need not be produced in color in the first instance. Additionally, if good cause exists for the Receiving Party to request production of certain Documents in color, the Receiving Party may request production of such Documents in color by providing a list of the Bates numbers of Documents it requests to be produced in color format. The Producing Party must not unreasonably deny such requests. The Parties reserve the right to allocate costs of color productions if they become burdensome.

v. Foreign Language.  Foreign language text files and Metadata should be delivered with the correct encoding to enable the preservation of the Document's original language.

w.    **Date Format.**

    i.    If a time is not available, such as the estimate date for a coded Document, then 12:00 am, or 00:00 should be assigned, i.e., 12/21/1999 00:00.

    ii.    Date delimiters, such as slashes and colons, must be consistent across all fields. In the format of MM/DD/YYYY, there are no spaces and only forward slashes.

    iii.    Date formats must be consistent within any one field.

iv.      Date formats must be consistent across all fields (i.e., a record with a sent date should have the same format in the last modified date field).

v.      Unless otherwise specified by a Producing Party, the Producing Parties must make reasonable efforts to process all ESI using a single time zone and make clear which time zone applies. For the avoidance of doubt, no party will be required to re-process any ESI that has been processed prior to the date of this ESI Protocol for purposes of complying with this provision. To the extent a Producing Party cannot process ESI with these time zones, it must disclose the same and the Parties shall meet and confer regarding a reasonable alternative.

x.      **Production Media.**  The preferred means of producing Documents is via secure FTP or secure file share. However, Documents may also be produced via encrypted flash drive, encrypted hard drive or encrypted CD or DVD. To the extent possible, physical media should be protected before it is produced.

y.      **Naming Convention for Production Media.**  Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file (e.g., .zip or .rar). The compressed file should be named so as to indicate Producing Party, the date of the production, and the sequence of the production (e.g., "TGH Production 202301864-001"). If the production is made using physical media, the media should be labeled to include: (a) text referencing that it was produced in DiPierro, et al. v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital; and (b) the Bates number range of the materials contained on the media.

z.      **Replacement Productions.**  Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates

and EndBates of the Documents being replaced. If the replacement production is being transmitted by physical media, the media must include the phrase "Replacement Production."

aa.    **Encrypted Data.**  To the extent a production is encrypted before it is produced, the Producing Party must contemporaneously transmit the credentials necessary to decrypt the data.

bb.    **Confidentiality Designations.**  If a particular paper Document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or pursuant to the terms of the Parties' Stipulated Protective Order entered by the Court in this Action, the designation must be branded on the Document's image at a location that does not obscure the underlying images. This designation also should be included in the appropriate data field in the Load File. For Documents produced in native format with image placeholders, the placeholder image for the Native File should be branded with the appropriate confidentiality designation to the extent possible. Receiving Parties must ensure that the confidentiality claim follows the Document regardless of whether the designation imprints on the file when viewed in printed form. A Party's failure to comply with the procedures set forth in this ESI Protocol shall not waive that Party's or any other person's right to assert that information is private, confidential, or otherwise protected.

## VII.    ASSERTIONS OF PRIVILEGE

a.    For any Document withheld in its entirety or produced but redacted, the Producing Party will produce privilege/redaction logs in a format that permits electronic searching. Entries for redacted Documents must identify, by Bates number, each Document over which the Producing Party is asserting privilege. Privilege logs may be produced on a rolling basis, but, in any event, no later than thirty (30) days after each associated production.  Unless the Parties agree otherwise, for all documents withheld in whole or in part based on privilege, the Parties agree to furnish logs

which comply with the legal requirements under the Federal Rules of Civil Procedure. At minimum, the privilege log must contain a Bates range, the type of document, the date of the creation or last modification or transmission of the document, the author or authors of the document with any attorneys designated as such, the recipients of the document (including individuals copied or blind-copied, if available) with any attorneys designated as such, whether the document contains attachments, the privilege or privileges claimed, and the basis for the assertion of the privilege or protection. The Parties shall consider whether the nature and volume of the privileged Documents and ESI warrants category-by-category privilege logging, Document-by-Document privilege logging, Metadata logging, or some combination of these approaches.

b.      The following Documents presumptively need not be included on a privilege log:

      i.      Communications exclusively between a Party and its legal counsel regarding the claims in or subject matter of this Action; and

      ii.      Attorney work product relating to the claims in or subject matter of this Action.

c.      The Parties agree to privilege log emails with the following rules:

      i.      In the case of an entirely withheld Document that contains more than 1 email (i.e., an email chain), if:

          a)      All of the emails in the chain contain the same subject line, to, from, cc and bcc;

          b)      All of the emails involve the same topic(s); and

          c)      All of the emails are being withheld for the same privilege reason(s),

Then the Producing Party need only make one log entry for the Document, so long as the log describes the Document as "multiple communications" or "multiple emails."

    ii.    In the case of an entirely withheld Document that contains more than 1 email (i.e., an email chain), if the characteristics identified in preceding sub-section are not met, then the Producing Party shall log each withheld communication separately.

d.    If an email contains both privileged and non-privileged communications, the non-privileged communications must be produced, either by separately producing a copy of the non-privileged communications embedded in the privileged communication, or by producing a copy of the entire communication string with the privileged portions redacted.

e.    If an email is produced with redactions, the redactions must not obscure the headers (from, to, subject, sent date) of any embedded emails, unless the identity or contact information of a person is privileged or otherwise protected.

f.    Redacted emails need not be logged as long as the objective Metadata (unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the Document. For redacted Documents where the subject matter is not decipherable because of the redactions, a description of the contents that is sufficient to understand the subject matter of the Document may be requested. Non-email Documents need not be logged if the reason for the redaction is noted on the face of the Document in the redacted area. Privileged information must be obscured with redaction boxes labeled with the basis for the redaction, (e.g. Redacted Attorney/Client Privilege), and,

where a Load File is utilized, the appropriate confidentiality designation must be shown in the appropriate data field in the Load File.

g.      A Producing Party must not withhold Documents on a claim of privilege merely because other Documents in the same Document family are privileged.

## VIII. THIRD PARTY DOCUMENTS

a.      A Party that issues a non-party subpoena ("Issuing Party") must include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that third parties produce Documents in accordance with the specifications set forth herein.

b.      The Issuing Party shall promptly notify the other Parties when it receives non-party productions and shall provide copies of such productions to the other Parties in the format in which they were received from the third-party within five days of the Issuing Party's receipt of the Documents.

c.      In the event that the format of a third-party production does not conform with the specifications set forth herein, the Parties shall meet and confer regarding the format of production to Receiving Parties.

d.      Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

**IT IS SO AGREED AND SIPULATED BY COUNSEL OF RECORD.**

/s/ Christopher K. Riedel

Rand L. McClellan (0079266)
Christopher K. Riedel (0101707)
Email: rmcclellan@bakerlaw.com
criedel@bakerlaw.com
BAKER & HOSTETLER LLP
200 Civic Center Drive
Suite 1200
Columbus, OH 43215-4138
Telephone:  614.228.1541
Facsimile:  614.462.2616


*Attorneys for Plaintiff*
*Advanced Technology Products, Inc.*

/s/ Kathryn M. Brown (per email authorization)

Keith Shumate (0056190)
Trial Attorney
keith.shumate@squirepb.com
Kathryn M. Brown (0100426)
kathryn.brown@squirepb.com
Olivia S. Hiltbrand (0106025)
olivia.hiltbrand@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH  43215
Telephone: 614.365.2700
Facsimile:  614.365.2499

*Attorneys for Defendants Oriental Export*
*Corporation and OEC USA, Inc.*


**IT IS SO ORDERED.**


/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

26

## APPENDIX A: REQUIRED METADATA FIELDS

| Field Name[2] | Populated For | Field Description |
|---|---|---|
| BegBates | All | Control Numbers for start of document |
| EndBates | All | Control Numbers for end of document |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family) |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family) |
| Attachment Count | All | Number of attachments |
| Custodian | All | Custodian name (ex. John Doe) |
| CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the Custodian field |
| LogicalPath | All | The directory structure of the original file(s). Any container name is included in the path. For email, this should be the email folder path (e.g. jdoe.pst\inbox) |
| AllPaths | All | This field should be populated with the folder paths of all duplicate files (Email and Edocs) that were suppressed during deduplication. |
| Hash value | All | The MD5 or SHA-I hash value |
| PgCount | All | Page Count or an Image Count, if auto generated |
| NativeFile | All | Native File Link |
| EmailSubject | Email | Subject line of email |
| DateSent | Email | Date email was sent |
| TimeSent | Email | Time email was sent |
| DateMod | Email, Edoc | Date the document was modified |
| TimeModified | Email, Edox | Time the document was modified |
| TimeSent | Email | Time email was sent |
| TimeZoneUsed | Email | Time zone used to process data during document collection and processing |
| ReceiveTime | Email | Time email was received |
| ReceiveDate | Email | Date email was received |
| To | Email | All recipients that were included on the "To" line of the email |

---

[2] The Field Names and Descriptions in this ESI Protocol are meant to serve as a guide; the Parties acknowledge that Field Names can vary from system to system and even between different versions of systems.

| From | Email | The name and email address of the sender of the email |
|---|---|---|
| CC | Email | All recipients that were included on the "CC" line of the email |
| BCC | Email | All recipients that were included on the "BCC" line of the email |
| DateCreated | Edoc | Date the document was created |
| TimeCreated | Edoc | Time the document was created |
| FileName | Email, Edoc | File name of the edoc or email |
| Title | Edoc | Any value populated in the Title field of the document properties |
| Subject | Edoc | Any value populated in the Subject field of the document properties |
| Author | Edoc | Any value populated in the Author field of the document properties |
| DocExt | All | File extension of the document |
| TextPath | All | Relative path to the document level text file |
| Redacted | All | "X,""Y,'" "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter |
| Confidentiality | All | Populated if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order |
| Production Volume | All | Production Volume Name |
| DocType | All | Description of document (Email, Attachment, EDoc, Hard Copy, etc) |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |

28

## APPENDIX B – CLAWBACK PROCEDURES

Any party who has received a notification of disclosure of Privileged Information from a Producing Party shall follow the following procedure to ensure all copies of Privileged Information are appropriately returned, sequestered, or destroyed from the Receiving Party's system:

i.      Locate each recall document in the document review/production database and return, sequester, or destroy the record from the database;

ii.     If there is a native file link to the recalled document, return, sequester, or destroy the native file from the network path;

iii.    If the database has an image load file, locate the document image(s) loaded into the viewing software and return, sequester, or destroy the image file(s) corresponding to the recalled documents. Remove the line(s) corresponding to the document image(s) from the image load file;

iv.     Apply the same process to any additional copies of the document or database, where possible;

v.      Locate and return, sequester, or destroy all other copies of the document, whether in electronic or hardcopy form. To the extent that copies of the document are contained on write-protected media, such as CDs or DVDs, these media shall be returned, sequestered, or destroyed and rendered unusable, with the exception of production media received from the recalling party, which shall be treated as described herein;

vi.     If the document was produced in a write-protected format, the party seeking to recall the document shall, at its election, either (i) provide a replacement copy of the relevant production from which the document has been removed, in which case the receiving party shall destroy and render unusable the original production media; or (ii) allow the receiving party to retain the original production media, in which case the receiving party shall take steps to ensure that the recalled document will not be used; and

vii.    Confirm that the recall of Privileged Information under this procedure is complete by way of letter to the Party seeking to recall Privileged Information.