**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ADVANCED TECHNOLOGY PRODUCTS, INC.,**

:

**Plaintiff,**

**v.**

**ORIENTAL EXPORT CORPORATION, *et al.*,**

:

**Defendants.**

**Case No. 2:25-cv-1239**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

**OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss filed by Defendants Oriental Export Corporation ("OEC India") and OEC USA, Inc. (Mot., ECF No. 21.) Advanced Technology Products, Inc. ("ATP") responded (Resp., ECF No. 24), and Defendants replied (Reply, ECF No. 34). The Motion is fully briefed and ripe for the Court's consideration.[1]

For the reasons below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

The following summary draws from the allegations in ATP's Complaint (ECF No. 1), as well as any documents integral to and incorporated therein. Any facts

[1] ATP requests oral argument on Defendants' Motion. (Resp., PAGEID # 674.) Because the Court does not believe that oral argument would be helpful to the resolution of Defendants' Motion, ATP's request is **DENIED**.

beyond the Complaint that are relevant to Defendants' Motion are discussed as necessary throughout this Opinion and Order.

**A. Factual Background**

ATP is an Ohio company with its principal place of business in Milford Center, Ohio. (Compl. ¶ 9.) ATP manufactures and distributes plastic tubing products, hoses, fittings, clamps, and other industrial accessories to automotive manufacturers in the United States. (*Id.* ¶ 1.)

In 2019, ATP contracted with OEC India—a corporation based in Mumbai, India, that manufactures electrical and industrial products for export to the United States—to purchase tubing products intended for use in air brake systems. (Compl. ¶¶ 2, 3, 10, 31.) OEC India represented to ATP that its tubing products would meet all applicable U.S. standards. (*Id.* ¶ 3.) Because of OEC India's compliance representations, ATP purchased tubing products from OEC India and resold them to customers in Ohio and throughout the United States. (*Id.* ¶ 4.)

ATP has purchased approximately $5.8 million worth of tubing products of various sizes and colors from OEC India since 2019. (Compl. ¶¶ 31, 34, 38.) OEC India shipped those tubing products to ATP in the United States, including some shipments directly to Ohio. (*Id.* ¶¶ 28, 32; *see, e.g.*, ECF No. 1-2, PAGEID # 50.) For each of ATP's purchases, OEC India issued a corresponding "Order Confirmation," some of which include a page for "Terms and Conditions of Sale."[2] (Compl. ¶¶ 35,

[2] ATP alleges that seven Order Confirmations contain the Terms and Conditions, but ATP has attached only six to its Complaint. (*Compare* Compl. ¶ 35 *with* ECF No. 1-1.) The other Order Confirmations that ATP provides do not contain the Terms and Conditions. (*See* ECF No. 1-2.)

37; *see* ECF No. 1-1.) Section 11 of the Terms and Conditions is titled "Warranty" and provides in relevant part:

> Seller warrants that the Products will perform substantially in accordance with Seller's published specifications (or other applicable specifications as agreed upon in writing by Seller) and will be free from defects in material and workmanship, when subject to normal, proper and intended usage by properly trained personnel. No other warranty, whether expressed or implied, shall exist in connection with the sale or use of any OEC products.

(ECF No. 1-1, PAGEID ## 22, 25, 28, 31, 37, 40.) Section 11 further provides that "Seller will, at its option, either repair or replace nonconforming products for which it is responsible, or issue a credit note for the purchase price to the buyer." (*Id.*) Additionally, Section 13, which is titled "Limitation of Liability," states:

> Notwithstanding anything to the contrary contained herein, Seller's aggregate liability for any claim of any kind shall not exceed the price paid by Buyer for the products giving rise to such claim. In no event shall Seller be liable for special, incidental, liquidated, or consequential damages howsoever arising out of Seller's performance (or non-performance) of the contract and notwithstanding whether Buyer may have been advised or is advised of the possibility of such damages.

(*Id.*) Finally, Section 15, which is labeled "Miscellaneous," provides that "[a]ny legal claim shall be controlled under the laws of the state of Delaware." (*Id.*)

In early September 2024, ATP's customers informed ATP of potential defects in the tubing products that ATP sold to them after purchasing from OEC India. (Compl. ¶ 49.) Until this notification, ATP had no knowledge that the tubing products failed to meet applicable specifications. (*Id.* ¶ 47.) ATP immediately told OEC India about the potentially defective tubing products. (*Id.* ¶ 50.)

Mahesh Khedekar, an OEC India representative, traveled to Wisconsin in September 2024 to meet with ATP representatives and others (including ATP's complaining customers) regarding the compliance issue. (Compl. ¶ 51.) He also met with ATP in Ohio in December 2024 to discuss "testing for the tubing products, participating, or remedy." (*Id.* ¶ 52.) Nevertheless, ATP alleges that OEC India ultimately refused to remedy, repair, or replace the noncompliant tubing products. (*Id.* ¶¶ 53, 54.) Instead, OEC India sought additional testing, failed to timely respond to ATP's requests for information, and attempted to mislead ATP by providing test results for products with different lot codes and manufacturing dates than those for the noncompliant tubing products. (*Id.* ¶¶ 55, 56.)

Because of OEC India's lack of testing and its failure to cooperate in furnishing requested information, ATP was forced to retest OEC India's tubing products through third-party labs at its own cost. (Compl. ¶ 8.) After receiving the testing data, ATP determined that the tubing products were noncompliant, recalled them, and notified the National Highway Traffic Safety Administration ("NHTSA") and known purchasers of the potential noncompliance. (*Id.*)

After ATP issued its recall, OEC India sued ATP in civil court in Mumbai, India. (ECF No. 44-1.) The Indian trial court dismissed the case in early July 2026, but OEC India's appeal of that dismissal remains pending.[3] (*Id.*; ECF No. 49-1.)

---

[3] Courts may take judicial notice of the existence and procedural posture of proceedings in other courts. *See Lyons v. Stovall,* 188 F.3d 327, 332 n.3 (6th Cir. 1999). That principle extends to foreign court proceedings. *See, e.g., Venture Glob. Eng'g, LLC v. Satyam Computer Servs. Ltd.*, No. 10-15142, 2014 WL 7013607, at *3 (E.D. Mich. Dec. 11, 2014) (noting the appropriateness of considering the existence of and procedural developments in Indian court proceedings).

### B. Procedural History

ATP filed this case in October 2025. (*See generally* Compl.) ATP maintains that OEC India represented and agreed—through, *inter alia*, the Terms and Conditions on certain Order Confirmations and the advertisements on its website—that its tubing products would "meet industry standard specifications, including the relevant requirements set by SAE International and the Federal Motor Vehicle Safety Standards (FMVSS)." (*Id.* ¶¶ 40–42; ECF No. 1-3.) Based on OEC India's failure to deliver compliant tubing products, ATP alleges nine claims: (1) breach of contract under Delaware and Ohio law (Counts I and II); (2) breach of express warranty under Delaware and Ohio law (Counts III and IV); (3) breach of implied warranty of merchantability under Delaware and Ohio law (Counts V and VI); (4) breach of implied warranty of fitness for a particular purpose under Delaware and Ohio law (Counts VII and VIII); and (5) fraud in the inducement (Count IX).[4] (Compl. ¶¶ 62–123.) ATP seeks compensatory and punitive damages, including costs associated with retesting, customer refunds, replacement goods, notices of noncompliance, and other damages. (*Id.* ¶ 8.) ATP also suffered reputational harm and lost future business. (*Id.*)

Defendants now move to dismiss ATP's Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), as well as the doctrine of *forum non conveniens*. (Mot., ECF No. 21.)

---

[4] ATP misnumbered its claims and uses "Count IV" and "Count V" twice in its Complaint. (*See generally* Compl.) The Court corrects that numbering herein.

## II. PERSONAL JURISDICTION UNDER RULE 12(b)(2)

The Court turns first to Defendants' arguments for dismissal for lack of personal jurisdiction.

### A. Legal Standard

Rule 12(b)(2) provides for dismissal of a lawsuit for lack of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction exists. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). Courts are to assess personal jurisdiction separately as to each defendant. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

When a defendant supports a Rule 12(b)(2) motion with evidence, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen,* 935 F.2d at 1458. If a court rules on a Rule 12(b)(2) motion prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (citation omitted). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006) (citation omitted). In this case, neither discovery nor an evidentiary hearing is necessary to rule on Defendants' Motion.

Where, as here, a court resolves a Rule 12(b)(2) motion based solely on written submissions and affidavits, the plaintiff's burden is "relatively slight," and the plaintiff need only make a *prima facie* showing of jurisdiction to defeat dismissal. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citation omitted). A plaintiff can meet that burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted). In the absence of an evidentiary hearing, courts apply the *prima facie* standard and view the evidence in the light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Courts should "not weigh the controverting assertions of the party seeking dismissal," *Theunissen*, 935 F.2d at 1459, but courts may consider a defendant's "undisputed factual assertions," *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citations omitted).

ATP does not argue that the Court has general jurisdiction over Defendants, so the Court considers only specific jurisdiction. *See Daimler AG v. Bauman,* 571 U.S. 117, 126–27 (2014) (distinguishing two types of jurisdiction). Courts may exercise specific personal jurisdiction over defendants in diversity cases only if jurisdiction is proper under Ohio's long-arm statute and comports with federal due process. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012).

"Ohio's long-arm statute grants Ohio courts personal jurisdiction over a non-resident if its conduct falls within the nine bases for jurisdiction listed by the

statute." *Conn*, 667 F.3d at 712; *see, e.g.*, *Safelite Grp., Inc. v. Lockridge*, No. 2:21-cv-4558, 2022 WL 195098, at *2 (S.D. Ohio Jan. 21, 2022) (Morrison, J.). The statute also provides that a court may exercise jurisdiction "on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). As relevant here, Ohio's long-arm statute authorizes personal jurisdiction over a defendant for claims arising from, *inter alia*, the defendant's conduct of "[t]ransacting any business" in Ohio, "[c]ontracting to supply services or goods" in Ohio, or causing certain tortious injuries in Ohio. *Id.* § 2307.382(A).

At the same time, due process requires sufficient contacts between the defendant and the forum so that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Sixth Circuit applies a three-part test for specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). "Failure to meet any one of the three prongs means that personal jurisdiction may not be invoked." *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018).

The *Southern Machine* inquiry focuses on the defendant's own contacts with the forum, not merely plaintiff's contacts with the forum or the defendant's contacts with persons who reside in the forum. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014);

*see also Maclin*, 314 F. Supp. 3d at 849 ("Specific jurisdiction refers to jurisdiction over claims arising from or related to a defendant's contacts with the forum state."). Related corporations do not automatically impute their contacts to each other merely because they share ownership, officers, branding, or a parent-subsidiary relationship. *See Lyngaas v. Curaden AG*, 992 F.3d 412, 432–34 (6th Cir. 2021); *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 849–50 (6th Cir. 2017). If the plaintiff satisfies the first two prongs of the *Southern Machine* test, "an inference of reasonableness arises," and "only the unusual case will not meet" the third prong. *Theunissen*, 935 F.2d at 1461 (citation omitted). At that point, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Air Prods. & Controls, Inc.,* 503 F.3d at 554 (citation omitted).

**B. Analysis**

Upon review, the Court finds that ATP has made a *prima facie* showing of specific personal jurisdiction over OEC India, but not over OEC USA.

**1. OEC India**

**a. Ohio Long Arm Statute**

Defendants do not meaningfully challenge the Court's jurisdiction over OEC India under Ohio's long-arm statute. (*See generally* ECF No. 21.) In any event, and to assure itself of its jurisdiction, the Court finds that ATP has made a *prima facie* showing that OEC India "transact[ed] business" in Ohio.

Courts interpret the phrase "transacting any business" broadly. *See Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,* 559 N.E.2d 477, 480–81 (Ohio 1990). The word "transact" is more expansive than the word "contract" and includes "to carry on business" and "to have dealings." *Franklin Prods., Inc. v. Gen. Nutrition Corp.*, No. 2:05-cv-1061, 2007 WL 2462665, at *4 (S.D. Ohio Aug. 27, 2007) (Frost, J.) (internal quotations omitted). But the mere solicitation of business, standing alone, is not enough. *Mobile Conversions, Inc. v. Allegheny Ford Truck Sales*, No. 1:12-cv-369, 2012 WL 12893476, at *2 (S.D. Ohio Oct. 15, 2012) (Barrett, J.). Courts consider, among other things, whether the defendant initiated the business dealing and whether the parties negotiated in Ohio or with terms affecting Ohio. *See AtriCure, Inc. v. Jian Meng*, No. 1:19-cv-00054, 2019 WL 4957915, at *3 (S.D. Ohio Oct. 8, 2019) (Barrett, J.) (citation omitted).

Viewed in ATP's favor, the record reflects that OEC India did more than merely solicit ATP's business. In 2017, OEC India initiated business dealings with ATP (a company headquartered in Ohio) when Mr. Khedekar reached out to ATP's Senior Vice President of Sales and Marketing (Duane Campbell) to discuss selling OEC India's products to ATP. (Campbell Decl. ¶ 5, ECF No. 24-7; *see also* ECF No. 24-8.) Then, in March 2019, Mr. Khedekar visited Mr. Campbell at ATP's offices in Ohio to negotiate potential sales. (Campbell Decl. ¶¶ 9–10; ECF No. 24-9 (text message from Mr. Khedekar to Mr. Campbell stating, "I look forward to clos[ing] a deal with you on Thursday").) After the meeting, Mr. Khedekar sent Mr. Campbell a proposal containing prices and information for various OEC India products, and

ATP received its first shipment of tubing products from OEC India a few months later. (Campbell Decl. ¶¶ 10–11; ECF No. 24-10.)

The parties maintained a continuous business relationship for several years thereafter, with Mr. Campbell communicating with Mr. Khedekar and other OEC India employees via email, telephone, or text message multiple times a week. (Campbell Decl. ¶¶ 11, 13–14.) Over the course of that multi-year relationship, OEC India sent Order Confirmations to ATP's Ohio headquarters and shipped millions of dollars worth of tubing products to ATP in Ohio and elsewhere. (Campbell Decl. ¶¶ 11–13; *see* ECF No. 1-2 (including five Order Confirmations reflecting an Ohio shipping address to which approximately $370,000 worth of products were shipped).) It appears that the parties contemplated an ongoing distributor and inventory partnership administered through ATP's Ohio headquarters. (Campbell Decl. ¶ 13; ECF No. 24-12 (April 2023 email from Mr. Khedekar referring to the parties' "long standing partnership").) These points are enough, at this stage, to constitute a *prima facie* showing that OEC India transacted sufficient business in Ohio to satisfy Ohio's long-arm statute.

**b. Due Process**

ATP has also satisfied the due process inquiry. Looking first to the purposeful availment prong of the *Southern Machine* test, the Court must evaluate the parties' prior negotiations and contemplated future consequences, along with the terms of any contracts and the parties' actual course of dealing. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). A court's focus in determining purposeful

availment should be on the "quality rather than the quantity of the contacts" and the "duration of the [parties'] relationship." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000).

As detailed above, this was not an isolated, one-time transaction between the parties—rather, OEC India established and maintained an ongoing commercial relationship with ATP. OEC India's representative contacted ATP's sales department, travelled to Ohio intending to negotiate a deal, and regularly communicated with ATP employees in Ohio for several years. (Campbell Decl. ¶¶ 5, 6, 13–14.) OEC India shipped at least some tubing products to Ohio and considered ATP, a company operating from Ohio, to be its "#1 partner" as it expanded its business in Ohio and throughout the country. (ECF No. 24-12.)

OEC India, relying on *Calphalon*, argues that it only availed itself of Ohio because ATP happened to be located there, such that its contacts in Ohio with ATP are the type of "random, fortuitous, and attenuated" contacts that fail to support a *prima facie* showing of jurisdiction. (Mot., PAGEID ## 448–50.) But unlike the entity in *Calphalon*, OEC India affirmatively chose to initiate and direct its activities toward Ohio and affiliate itself with an Ohio-based enterprise to form a partnership with substantial and continuing communications and obligations. In this way, OEC India is more like the defendant in *Burger King*, who "deliberately 'reach[ed] out beyond' Michigan[,] … negotiated with a Florida corporation for the purchase of a long-term franchise[,]" and ultimately "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching

contacts with Burger King in Florida." *Burger King*, 471 U.S. at 479–80; *see also, e.g.*, *Tharo Systems, Inc. v. cab Produkttechnik GmbH & Co. KG,* 196 F. App'x 366, 370–71 (6th Cir. 2006) (holding that German manufacturer purposefully availed itself of Ohio by reaching out to Ohio company, directing frequent communications to Ohio, visiting Ohio to negotiate and strengthen the relationship, establishing long-term commercial partnership, and shipping products into Ohio).

Moreover, a nonresident defendant's allegedly fraudulent communications into the forum state may be sufficient to confer personal jurisdiction under certain circumstances. ATP alleges that OEC India misrepresented that its tubing products met applicable standards in the Terms and Conditions on certain Order Confirmations and as part of a March 2019 email after the parties had met to negotiate potential sales in Ohio. (*See* ECF No. 24-10.) Although OEC India personnel may not have made these misrepresentations while physically in Ohio, the company's conduct of sending false information into Ohio by phone and email had foreseeable effects there. *See, e.g.*, *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) ("The acts of making phone calls and sending facsimiles into the forum … may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." (citations omitted)). ATP has made a *prima facie* showing that OEC India purposefully availed itself of the privilege of acting or causing a consequence in Ohio.

Turning to the second prong of the *Southern Machine* test, the "arising from" requirement is a "lenient standard." *Air Prods. & Controls, Inc.,* 503 F.3d at 553. "If

a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1267 (6th Cir. 1996). This factor "does not require that the cause of action formally arise from [a] defendant's contacts with the forum; rather, this criterion requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (citation omitted).

ATP meets the second prong because its distributor relationship with OEC India is the foundation of its Complaint. According to ATP, OEC India (1) induced the relationship by misrepresenting the compliant nature of its tubing products, and (2) breached the parties' agreement by selling ATP non-compliant products. As to the first contention, OEC's activity that established purposeful availment also gave rise to ATP's claim. As to the second contention, OEC India's transaction of business in Ohio (i.e., initiating and maintaining a business relationship with an Ohio entity) is "necessarily the very soil from which the action for breach grew." *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 229 (6th Cir. 1972), *overruled on other grounds by Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

Because ATP has satisfied the first two *Southern Machine* prongs, the Court presumes that the third reasonableness prong is also met. *See Air Prods. & Controls, Inc.,* 503 F.3d at 554 (citation omitted). Now, OEC India must persuade the Court that "some other considerations would render jurisdiction unreasonable." *Id.* It has not done so.

Courts "consider several factors" when assessing the reasonableness of asserting personal jurisdiction over a defendant, "including the burden on the defendant, the interest of the forum state, [and] the plaintiff's interest in obtaining relief." *CompuServe,* 89 F.3d at 1268 (internal quotations omitted). Here, Ohio has an interest in resolving a dispute brought by an Ohio plaintiff that allegedly suffered injury from products sold through a multi-year commercial relationship initiated and maintained by an out-of-state defendant. *See, e.g.*, *Tharo Sys., Inc.*, 196 F. App'x at 372. ATP likewise has a strong interest in obtaining relief in Ohio.

On the other hand, litigating in Ohio will impose additional burdens on OEC India, given that it is located in India, manufactured and tested the at-issue products in India, and has witnesses and documents in India. (Shudra Decl. ¶¶ 4, 22–23, 27–28, ECF No. 21-1.) Although these and other "unique burdens" on international defendants like OEC India deserve "significant weight," the interests of ATP and Ohio outweigh them here. OEC India is a sophisticated entity that has shown its ability to travel to Ohio without significant financial or logistical barriers, and "the fact that [ATP] might be able to assert [its] rights in another forum does not, in and of itself, make the exercise of personal jurisdiction in [Ohio] unreasonable." *Flagstar Bank, FSB v. Woudenberg*, No. 09-13437, 2010 WL 1027860, at *5 (E.D. Mich. Mar. 17, 2010). This is not the type of "unusual case" that fails the third prong.

OEC India's significant correspondence and business dealings with ATP over the past several years support the conclusion that OEC India could reasonably

anticipate being haled into an Ohio court. OEC India has not presented a compelling case that the Court's exercise of specific personal jurisdiction would be so unreasonable that it would violate due process. Accordingly, Defendants' Motion is **DENIED** as to OEC India's request for dismissal under Rule 12(b)(2).

**2. OEC USA**

The Complaint does not clearly lodge any substantive allegations stemming from the tubing products against OEC India's wholly owned subsidiary, OEC USA. (*See generally* Compl.) Nevertheless, ATP argues that the Court should treat the two OEC companies as alter egos for jurisdictional purposes. (*Id.* ¶ 24.)

The alter-ego theory can support personal jurisdiction when one entity "exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (internal quotations omitted). Alter-ego jurisdiction is narrow because the theory is "akin to piercing the corporate veil," which is appropriate only in "extraordinary cases." *Nottingham-Spirk Design Assocs., Inc. v. Halo Innovations, Inc.*, 603 F. Supp. 3d 561, 569 (N.D. Ohio 2022). Relevant factors in the alter ego analysis include whether the entities share employees or officers, engage in the same business enterprise, use the same address or phone lines, use the same assets, complete the same jobs, or maintain separate books and financial statements. *Estate of Thomson*, 545 F.3d at 362–63. Courts also consider whether corporate formalities are observed, whether one entity controls the daily affairs of the other,

whether corporate records are kept, and whether the corporations are financially independent. *Id.*; *Nottingham-Spirk*, 603 F. Supp. 3d at 569. Importantly, shared ownership, overlapping leadership, shared branding, and ordinary parent-subsidiary coordination are not enough. *See Anwar*, 876 F.3d at 849–50.

Defendants present evidence that OEC USA—a Delaware corporation with operations in New Jersey (*see* Mendes Decl. ¶¶ 4–5, ECF No. 21-2)—and OEC India are separate businesses with different markets, product lines, and customers. (*See* Shudra Decl. ¶ 9.) They maintain separate governing documents, leadership meetings, minutes, bank accounts, accounting books, corporate records, recordkeeping systems, tax returns, employees, and websites. (*Id.* ¶¶ 11–16; Mendes Decl. ¶¶ 10–15.) Although ATP's opposing evidence may support the existence of a parent-subsidiary relationship and some business coordination between OEC India and OEC USA, ATP has not shown the kind of unity of interest, financial dependence, disregard of corporate formalities, or day-to-day control required for the Court to treat the two entities as one for jurisdictional purposes.

ATP also fails to show that OEC USA actually participated in the relationship or transactions giving rise to its claims.[5] OEC USA has no facilities or employees in Ohio, is not registered to do business in Ohio, and has not visited with

[5] ATP's generalized, collective use of "OEC" throughout the Complaint is insufficient to establish that OEC USA engaged in certain conduct or is subject to personal jurisdiction here. "Each defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Mag.*, 465 U.S. 770, 781 n.13 (1984). "Thus, to allege personal jurisdiction over a defendant, group pleading is not permitted." *Camelo v. Pluese, Becker & Saltzman LLC*, No. 23-CV-12598, 2024 WL 4299504, at *7 (E.D. Mich. Sept. 26, 2024) (citation modified).

ATP in Ohio or any other state. (Mendes Decl. ¶¶ 16–18.) More importantly, ATP sent purchase orders to OEC India (not OEC USA), and ATP never included OEC USA's banking information on any purchase order. (Shudra Supp. Decl. ¶ 4, ECF No. 34-1.) Nor did OEC USA ever coordinate payments or purchase orders on behalf of OEC India—rather, OEC India issued the Order Confirmations, prepared the shipping documents, and received ATP's payments. (*Id.* ¶¶ 5–9.) And OEC India, not OEC USA, made the alleged misrepresentations to ATP.

ATP points to an August 2022 email in which OEC India wrote that it had created OEC USA "for ease of doing business," that future products would be shipped to ATP through OEC USA, and that ATP should direct future purchase orders to OEC USA. (ECF No. 24-18, PAGEID # 827.) Although that communication may support the argument that OEC India contemplated using OEC USA to facilitate future transactions with ATP, it does not show that the arrangement was implemented or that OEC India and OEC USA ceased operating as separate entities. *See, e.g.*, *Anwar,* 876 F.3d at 849 (explaining that alter-ego jurisdiction requires "pervasive control over the subsidiary … from broad policy decisions to routine matters of day-to-day operation" (citation omitted)).

ATP has not, on this record, made a *prima facie* showing that OEC USA is OEC India's alter ego, such that the Court may exercise specific personal jurisdiction over OEC USA.[6] Defendants' Motion is **GRANTED** as to OEC USA's request for dismissal under Rule 12(b)(2).

---

[6] ATP alternatively requests jurisdictional discovery on this issue. (Resp., PAGEID # 670.) To obtain such discovery, ATP must provide "a reasonable basis"

## III. FORUM NON CONVENIENS

Defendants next argue that the Court should dismiss this case pursuant to the doctrine of *forum non conveniens* because it duplicates the parallel Indian court proceedings. (Mot., PAGEID # 445.)

### A. Legal Standard

Under the doctrine of *forum non conveniens*, "a district court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016) (citation omitted). Because federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, *forum non conveniens* should be invoked only in "rather rare cases." *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 618 (6th Cir. 2018) (citations omitted).

*Forum non conveniens* involves a three-step analysis. *Hefferan*, 828 F.3d at 492. First, courts determine "the degree of deference owed" to the plaintiff's choice of forum. *Id*. Second, the defendant bears the burden of "establishing an adequate

---

(beyond "mere hope or speculation") to expect that discovery "would reveal evidence that supports the claimed jurisdiction." *Nottingham-Spirk,* 603 F. Supp. 3d at 570–72 (citations omitted). Although ATP suggests that OEC India created OEC USA to facilitate some United States business (*see* Resp., PAGEID ## 681–83), ATP identifies no non-speculative basis to expect that discovery would show OEC USA's participation in the transactions at issue, compliance representations, product shipments, or other suit-related conduct. *See, e.g.*, *Reyes v. Freedom Smokes, Inc.,* No. 5:19-CV-2695, 2020 WL 1677480, at *6 (N.D. Ohio Apr. 6, 2020) (denying jurisdictional discovery where plaintiff provided no evidence suggesting sufficient minimum contacts and where further discovery would amount to a fishing expedition). Defendants' evidence instead shows that the relevant documents and payments ran through OEC India. (*See, e.g.*, Shudra Supp. Decl. ¶¶ 4–9.) ATP's jurisdictional discovery request is **DENIED**.

alternative forum." *Id*. Third, the defendant must show that the plaintiff's chosen forum is "unnecessarily burdensome based on public and private interests." *Id*.

**B. Analysis**

OEC India has not carried its ultimate burden to show that *forum non conveniens* dismissal is warranted. ATP's choice to sue in its home forum is entitled to substantial deference. Although India may be an alternative forum, OEC India has not shown that ATP's chosen forum is unnecessarily burdensome.

**1. Deference to ATP's Chosen Forum**

"When a domestic plaintiff initiates a suit in [its] home forum, that choice is normally entitled great deference because it is presumptively convenient for the plaintiff." *Hefferan*, 828 F.3d at 493 (6th Cir. 2016) (citation omitted). "A U.S. forum is generally presumed to be convenient if a plaintiff is closely connected to the United States." *Associação Brasileira*, 891 F.3d at 619; *see also Hefferan*, 828 F.3d at 494 ("[T]he greater the plaintiff's connection to the United States and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens." (citation modified)).

ATP is an Ohio corporation with its principal place of business in Milford Center, Ohio. (Compl. ¶ 9.) As such, it is "closely connected" to this forum, and its convenience in litigating here is not slight or nonexistent. OEC India argues that ATP sued in Ohio not for convenience purposes but as an exercise in forum shopping (*see* Mot., PAGEID # 463), but that argument is unavailing. Although

evidence of forum shopping may reduce the deference otherwise owed to a plaintiff's choice, *see Associação Brasileira*, 891 F.3d at 619, OEC India has not persuaded the Court that ATP is attempting to obtain a tactical advantage or engage in forum shopping by bringing its claims in Ohio—its home forum and a forum linked to the parties' commercial relationship. ATP's choice of forum weighs against dismissal.

**2. Alternative Forum**

A defendant's identification of an alternate forum is a "prerequisite for dismissal, not a factor to be balanced." *Associação Brasileira*, 891 F.3d at 619–20. An alternative forum is generally available when the defendant is "amenable to process" there and the foreign court can exercise jurisdiction over the parties. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *Watson v. Merrell Dow Pharm., Inc.*, 769 F.2d 354, 357 (6th Cir. 1985). A forum is not adequate if the remedy it offers "is so clearly inadequate or unsatisfactory that it is no remedy at all," such as, for example, if the other forum "does not permit litigation of the subject matter of the dispute." *Piper Aircraft Co.*, 454 U.S. at 254, n.22. But such a forum is not inadequate merely because its substantive law is different or less favorable to the plaintiff than that of the U.S. forum. *Id*. at 247.

OEC India emphasizes the ongoing litigation in India to argue that the courts in that country are adequate alternative forums. (Mot., PAGEID # 463.) OEC India observes that it is amenable to process in India and offers evidence that ATP may pursue its claims in an Indian High Court that permits litigation of the subject matter and is capable of awarding the claimed damages. (*See* Shudra Decl. ¶ 4; Ram

Decl. ¶¶ 12–13, ECF No. 21-3; Ram Supp. Decl. ¶¶ 7–8, ECF No. 34-6.) ATP challenged the Indian civil court's personal jurisdiction over it in the action pending there (*see* Ram Decl. ¶ 10), but ATP does not point to anything preventing it from filing a new case against OEC India in that court or the Indian High Court, thereby voluntarily consenting to jurisdiction. OEC India has thus carried its burden to provide an adequate alternative forum.

### 3. Public and Private Interests

The onus is now on OEC India to show that ATP's chosen forum is unnecessarily burdensome. *See Hefferan*, 828 F.3d at 498. That inquiry is guided by the public- and private-interest factors set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508. The Court discusses these factors below.

#### a. Public-Interest Factors

Public-interest factors include "administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co.*, 454 U.S. at 241 n.6 (quoting *Gulf Oil*, 330 U.S. at 509). Courts "must consider the locus of the alleged

culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).

As explained in Section II.B.1. above, ATP has a strong connection to the local forum (in which OEC India also conducts business), and Ohio has a local interest in deciding a controversy alleging that a foreign entity injured a local resident by directing fraudulent communications to the resident and shipping non-compliant products into the state. *See Hefferan*, 828 F.3d at 500 ("The primary local-interest considerations are the parties' connections to the local forum and the location of the injury."); *cf. AtriCure, Inc.*, 2019 WL 4957915, at *6 (observing that Ohio has a "strong interest in ensuring that foreign businesses who transact with Ohio companies do so fairly and legally"). OEC India argues that India has some local interest because OEC India is an Indian company that manufactured and tested the at-issue tubing products in India. (Mot., PAGEID # 464.) But the country where a product was manufactured has a lesser interest in litigation involving an injury caused by that product than the country where the injury occurred. *See, e.g.*, *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir. 1984). And it would not be unfair to burden jurors in this forum to uphold ATP's and Ohio's interests.

In addition, OEC India neither argues that this Court's docket is congested so as to create administrative difficulties nor responds to ATP's sources indicating that Indian courts are overwhelmed. (Resp., PAGEID # 703.) Indeed, it is far from clear that an Indian court would provide a more efficient means of resolving the complete dispute. If OEC India's appeal of the Indian civil court's dismissal succeeds, the civil

court action may resume, but ATP would be unable to assert its complete damages claim there because of monetary limits so would need to institute a separate action in the Indian High Court. (Chilumuri Decl. ¶ 15, ECF No. 24-1; Ram Suppl. Decl. ¶¶ 7–8.) The prospect of multiple Indian proceedings undercuts OEC India's contention that dismissal would avoid duplicative litigation.

As to the application of foreign law, OEC India argues that Indian law governs many of ATP's claims, a consideration that would favor an Indian forum. (Mot., PAGEID ## 463–65.) ATP disputes that position and argues (albeit with limited analysis) that Ohio or Delaware law applies. (Resp, PAGEID # 703; *see also* ECF No. 1-1 (six Order Confirmations containing Delaware choice-of-law provision).) "The doctrine of *forum non conveniens*, however, is designed in part to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft Co.*, 454 U.S. at 251. Even if Indian law applies here, "this factor alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate." *Id.* at 260 n.29 (citations omitted). The factors may favor trial in a foreign jurisdiction even if it were determined that American law applied, and vice versa. *See, e.g.*, *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 517 (6th Cir. 1986). Here, OEC India has not identified any unusually complex or unsettled question of Indian law, and the Court is certainly capable of applying foreign law. *Cf. Am. Pan Co. v. Lockwood Mfg., Inc.,* No. C–3–06–197, 2006 WL 2792175, at 7 (S.D. Ohio Sept. 26, 2006) (Rose, J.) (noting, within the context of a *forum non conveniens* analysis, that choice-of-law favored dismissal

but also recognizing that "it is not uncommon for U.S. Courts to hear cases in which foreign law is applied").

On the whole, the public-interest factors do not demonstrate that litigating here would unnecessarily burden OEC India.

**b. Private-Interest Factors**

Private-interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508. Courts "must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe*, 486 U.S. at 528.

Looking to the first factor, ATP contends that it possesses the critical sources of proof in this case—namely, materials concerning its inventory, testing, customer and regulatory communications, recall response, and damages. (Resp., PAGEID ## 701–02.) On the other side, OEC India insists that it also has documents in India concerning its product manufacturing and testing, among other business records. (Shudra Decl. ¶¶ 22–23, 27–28.) Insofar as OEC India's documents about the at-issue products and transactions are in its own possession, "the mere shipment of them to the U.S. forum … can hardly be vexatious or oppressive." *Duha v. Agrium,*

*Inc.*, 448 F.3d 867, 876 (6th Cir. 2006). Even assuming, moreover, that the procedures for compelling the production of evidence in a U.S. forum are more burdensome, OEC India "has neither alleged nor shown the need to avail itself" of those procedures. *Hefferan*, 828 F.3d at 499.

As to the remaining factors, OEC India identifies its India-based witnesses in general terms, but it does not pinpoint any witnesses who would avoid appearing in Ohio. *See Hefferan*, 828 F.3d at 499 (noting that the availability-of-compulsory-process factor "receive[s] less wight when it has not been alleged or shown that any witnesses would be unwilling to testify" (citation omitted)). Nor does OEC India address the costs of having their witnesses travel to Ohio, and neither party raises the need to view a premises or other practical problems like ATP's financial ability to bring suit in India, so the Court gives these factors less weight.

In sum, the private-interest factors weigh in favor of the Court's retention of this case.

* * *

The exceptional nature of a dismissal for *forum non conveniens* means that a defendant invoking it bears a heavy burden in opposing the plaintiff's chosen forum. *See Gulf Oil*, 330 U.S. at 508. OEC India has failed to carry that burden—it has not shown the "oppressiveness and vexation" required to disturb ATP's home-forum choice. Because this is not one of the rare cases in which *forum non conveniens* dismissal is appropriate, Defendants' Motion is **DENIED** as to that issue.

## IV. FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

Because the Court dismisses OEC USA for lack of personal jurisdiction, the Court addresses only the merits of ATP's claims against OEC India.

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Although the Court accepts well-pleaded factual allegations as true, it need not accept legal conclusions as true. *Id.* In reviewing a motion to dismiss, the

Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court may also consider the Complaint, exhibits attached to the Complaint, public records, and documents referred to in the Complaint and central to the plaintiff's claims without converting the motion into one for summary judgment. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

Federal Rule of Civil Procedure 9(b) subjects fraud claims to a heightened pleading standard. A party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy that requirement, a complaint must specify the "who, what, when, where, and how" of the alleged fraud. *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022) (citation omitted). Although intent, knowledge, and other conditions of a person's mind may be alleged generally, the plaintiff must still plead facts that make the asserted state of mind plausible. Fed. R. Civ. P. 9(b); *Republic Bank & Tr. Co. v. Bear Stearns & Co.,* 683 F.3d 239, 247 (6th Cir. 2012). Ultimately, the pleading must contain sufficient detail to place the defendant on notice of the alleged misconduct and permit the defendant to prepare a responsive pleading. *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 776 (S.D. Ohio 2016) (Black, J.) (citation omitted).

**B. Analysis**

ATP's Complaint alleges claims for breach of contract, breach of express warranty, breach of the implied warranty of merchantability, breach of the implied

warranty of fitness for a particular purpose, and fraudulent inducement. (*See generally* Compl.) OEC India not only attacks the merits of these claims but also argues, as a threshold matter, that the Terms and Conditions in the Order Confirmations limit the liability and types of remedies that the Court may impose. (Mot., PAGEID # 455.)

### 1. Impact of Limiting Provisions in the Terms and Conditions

OEC India maintains that all of ATP's claims "should be dismissed to the extent that they seek to impose liability or a remedy beyond the express provisions of the Terms and Conditions." (Mot., PAGEID # 461.) Those provisions permit OEC India, at its option, to repair or replace nonconforming products or issue a credit or refund (Section 11) and limit OEC India's aggregate liability as to certain categories of damages (Section 13). (*See* ECF No. 1-1.) OEC India contends that those provisions bar ATP from recovering damages beyond the purchase price of the allegedly defective products. (Mot., PAGEID ## 460–61.)

Section 11 does not require dismissal at this stage of the proceedings. That section does not expressly state that repair, replacement, or refund are ATP's sole or exclusive remedies. (*See* ECF No. 1-1.) Even assuming so, ATP alleges (citing Delaware law) that Section 11's limited remedy is unenforceable because it fails its essential purpose given that OEC India "refus[ed] to remedy the noncompliant tubing products." (Compl. ¶¶ 58, 60, 84.) Whether a limited remedy has failed of its essential purpose is a question of fact. *See, e.g., Lincoln Elec. Co. v. Technitrol, Inc.*, No. 1:08 CV 2346, 2010 WL 2219341, at *4 (N.D. Ohio Jun. 2, 2010) (citations

omitted); *U.S. ex rel. Metal Bldg. Components, Inc. v. Angelini*, No. CIV.A. 98-8 GMS, 2000 WL 1728287, at *4 (D. Del. Mar. 27, 2000). ATP's allegations raise factual questions about whether the remedy provided by Section 11 supplied ATP with the substantial value of its bargain, such that dismissal on the pleadings is inappropriate. *Cf., e.g., WEL Cos., Inc. v. Haldex Brake Prods Corp.*, 467 F. Supp. 3d 545, 563–65 (S.D. Ohio 2020) (Sargus, J.) (denying summary judgment where the evidence could establish that limited remedy provided no meaningful relief when replacement with another defective product or a refund was insignificant compared with the resulting damage).

Section 13, however, limits the damages recoverable from the transactions it governs. Both Delaware and Ohio law require courts to give effect to the plain and unambiguous language used by contracting parties. *See Textileather Corp. v. GenCorp Inc.*, 697 F.3d 378, 382 (6th Cir. 2012) (noting that Ohio courts must "apply the plain language of the contract unless that language is ambiguous"); *Thompson St. Cap. Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 340 A.3d 1151, 1166 (Del. 2025) ("When interpreting a contract, Delaware courts read the agreement as a whole and enforce the plain meaning of clear and unambiguous language." (internal quotations and citation omitted)). Here, Section 13 states that "[OEC India's] aggregate liability for any claim of any kind shall not exceed the price paid by [ATP] for the products giving rise to such claim. In no event shall [OEC India] be liable for special, incidental, liquidated, or consequential damages howsoever arising out of [OEC India's] performance (or non-performance)

of the contract." (See ECF No. 1-1.) This language clearly and broadly limits OEC India's liability for claims, including those brought by ATP in this case. ATP's passing and conclusory allegation that the provision "is vague and ambiguous" is insufficient to undermine the plain wording of the same or create ambiguity where there is none.[7] ATP's claims based on the six Order Confirmations containing Section 13 (Counts I, III, V, VII, and IX[8]) are **DISMISSED** insofar as they seek damages or remedies beyond that provision's scope.

But the Complaint does not establish that the remaining Order Confirmations, which omit the Terms and Conditions, incorporated Section 13's limitation or that the parties otherwise agreed that such terms would govern every purchase. The Court, therefore, cannot determine that there exists a limitation on the damages ATP seeks for its claims based on the remaining Order Confirmations.

### 2. Breach of Contract (Counts I and II) and Breach of Express Warranty (Counts III and IV)

ATP brings claims for breach of contract and breach of express warranty under Ohio and Delaware law.[9] (*See* Compl. ¶¶ 62–78.) OEC India argues that ATP

---

[7] In response to OEC India's Motion, ATP states, without argument, that Section 13 fails its essential purpose. (Resp., PAGEID # 697.) But ATP does not allege so in its Complaint. The Court cannot consider new allegations in a response brief, *see Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020), nor will it put the bones on ATP's argument for it.

[8] ATP's claims under Delaware law appear to correspond to the six Order Confirmations that include the Delaware choice-of-law provision. (*See* ECF No. 1-1.) Likewise, ATP's claims under Ohio law appear to correspond to the Order Confirmations that lack any choice-of-law provision. (*See* ECF No. 1-2.)

[9] Only six of the Order Confirmations provided to the Court contain the Terms and Conditions, including the express warranty. Neither party fulsomely

fails to adequately allege breach by neglecting to state which tubing products were non-compliant or how those products did not meet the applicable standards. (Mot., PAGEID # 457.)

At the outset, ATP's breach-of-contract claims and express-warranty claims are duplicative. ATP alleges that the same conduct by OEC India—specifically, selling tubing products to ATP that were not compliant with applicable standards and refusing to timely remedy the non-compliant products—breached the parties' contracts (i.e., the Order Confirmations) and the express warranty therein. (*Compare* Compl. ¶¶ 70–71, 77, *with id.* ¶¶ 82–83, 88.) ATP does not point to any other contractual provisions that OEC India breached. Because the entire foundation of ATP's breach-of-contract claims is OEC India's breach of express warranty, the claims are redundant. *See, e.g.*, *Granite Vision, Inc. v. BACA Sys., LLC*, No. 24-cv-10852, 2024 WL 4250673, at *4 (E.D. Mich. Sept. 5, 2024) (recommending denial of motion to dismiss breach-of-contract claim "except to the extent that Plaintiff alleges breach of contract because of breach of express warranty"), *R&R adopted*, 2025 WL 424713 (E.D. Mich. Feb. 6, 2025).

However, the Court is mindful that Rule 8(a) allows for alternative theories of liability. OEC India also raises this surplusage argument for the first time in its Reply. (*See* Reply, PAGEID # 1065); *see, e.g.*, *Marshall v. Caudill*, No. 23-5938, 2024 WL 4635258, at *3 (6th Cir. Sept. 4, 2024) ("We generally do not consider

---

addresses the impact of this point on the viability of ATP's breach-of-contract and express-warranty claims insofar as they relate to the Order Confirmations that do not incorporate those terms.

arguments raised for the first time in a reply brief." (citation omitted)). Considering this, and given that courts are hesistant to dismiss duplicative claims at the motion-to-dismiss stage, *see, e.g.*, *Riley v. Gen. Motors, LLC*, 591 F. Supp. 3d 259, 270 (S.D. Ohio 2022) (Marbley, J.), the Court declines to dismiss ATP's breach-of-contract claims on redundancy grounds.

As a federal court sitting in diversity, the Court applies Ohio choice-of-law rules to ATP's claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Under Ohio law, a choice-of-law analysis is only necessary when an actual conflict exists between the laws of the competing jurisdictions. *Columbia Casualty Co. v. State Auto Mutual Ins. Co.*, No. 24-3338, 2025 WL 1082120, at *4 n.2 (6th Cir. Apr. 10, 2025). "This is so even where, as here, the contract at issue contains a choice-of-law clause." *Ahkeo Labs LLC v. Plurimi Inv. Managers, LLP*, 293 F. Supp. 3d 741, 750 (N.D. Ohio 2018). Neither party identifies a conflict between Ohio and Delaware law[10]—indeed, the Court's research indicates that the two states require substantially similar elements for breach-of-contract claims. *Compare V&M Star Steel v. Centimark Corp.,* 678 F.3d 459, 465 (6th Cir. 2012) (applying Ohio law) *with VLIW Tech., LLC v. Hewlett-Packard Co.,* 840 A.2d 606, 612 (Del. 2003) (applying Delaware law). The same is true for breach-of-express-warranty claims. *Compare Riley*, 591 F. Supp. 3d at 271 (applying Ohio law), *with Godreau-Rivera v. Coloplast*

[10] Although OEC India asserts that Indian law should apply to ATP's claims in the context of its *forum non conveniens* agument, OEC India analyzes the merits of those claims for Rule 12(b)(6) purposes only under Ohio and Delaware law. (Mot., PAGEID ## 456, 465–66.)

*Corp.*, 598 F. Supp. 3d 196, 219 (D. Del. 2022) (applying Delaware law). Because the two jurisdictions would reach the same result, the Court applies Ohio law.

A breach-of-contract claim requires "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *V&M Star Steel,* 678 F.3d at 465 (internal quotations and citation omitted). Viewing the facts in the light most favorable to ATP and drawing all reasonable inferences in its favor, ATP plausibly alleges each of those elements. ATP says that it entered into multiple contracts with OEC India for the purchase of tubing products that complied with applicable industry standards. (Compl. ¶¶ 31, 35–42, 62, 67–68.) Although ATP paid for the products, OEC India breached the agreements by delivering noncompliant products and by failing to remedy the noncompliance. (*Id.* ¶¶ 43, 48, 53–60, 70–71.) ATP lastly asserts resulting damages. (*Id.* ¶ 8.)

Similarly, "[t]o state a claim for breach of warranty under the [Ohio] UCC, a plaintiff must plead that: (1) a warranty existed; (2) the product failed to perform as warranted; (3) plaintiff provided defendant with reasonable notice of the defect; and (4) plaintiff suffered injury as a result of the defect."[11] *Riley*, 591 F. Supp. 3d at 271; *see also* Ohio Rev. Code § 1302.26(A). The Court finds that ATP has plausibly alleged each of those elements, too.

First, ATP asserts that OEC India expressly promised that its products would meet the applicable standards and that it would repair or replace any non-

[11] ATP's Complaint does not specify whether it brings express-warranty claims under common law or under the Uniform Commercial Code ("UCC"). Based on the standards recited by ATP in response to OEC India's Motion (*see* Resp., PAGEID # 691), the Court construes the claims as arising under the UCC.

compliant products. (Compl. ¶ 79.) ATP refers to the "Warranty" section (Section 11) of the Terms and Conditions in some of the Order Confirmations, which expressly warrants, *inter alia*, that the products "will perform substantially in accordance with Seller's published specifications" and "will be free from defects in material and workmanship." (*See, e.g.*, ECF No. 1-1, PAGEID # 22.) ATP also contends that OEC India represented the compliant nature of its products on its website. (Compl. ¶ 42.) These representations, in turn, became part of the basis of the parties' bargain and created an express warranty. (*Id.* ¶¶ 43, 45, 48.)

As to the second element, the Complaint alleges that the tubing products failed to perform as warranted because they did not meet all applicable specifications and standards. (Compl. ¶¶ 45–46, 48, 82.) Third, the Complaint states that ATP notified OEC India of the potential defects and gave OEC India an opportunity to investigate and cure them, but OEC India did not do so. (*Id.* ¶¶ 50–52, 54, 71.) ATP also alleges damages. (*Id.* ¶ 8.)

OEC India's contrary arguments are unavailing. OEC India argues that the Complaint does not give sufficient notice of how the tubing products failed to conform with any contract or warranty, but OEC India does not point to any case law requiring ATP to specifically catalog each non-compliant product in its Complaint and identify the exact ways that those products did not comply with particular sub-sections of applicable standards. Rather, "[u]nlike fraud claims, when pleading a breach of warranty claim, specific facts are not necessary" as long as the plaintiff's allegations are sufficient to notify the defendant of the alleged

warranty breach. *Bush Truck Leasing, Inc. v. Cummins, Inc.*, No. 1:18-CV-871, 2021 WL 9057624, at *7 (S.D. Ohio Apr. 13, 2021) (McFarland, J.) (citations omitted); *cf. Little Mountain, LLC v. DR Guns, LLC*, 725 F. Supp. 3d 726, 749 n.26 (N.D. Ohio 2024) ("[B]reach of contract claims need not be plead with particularity."). ATP pleads that the products were not properly tested and references the pertinent specifications with which the products allegedly did not comport. (*See, e.g.*, Compl. ¶¶ 5, 42.) Dismissal for lack of detail now would be premature because ATP's allegations are enough, at this stage, to put OEC India on notice of the asserted breach. *Cf., e.g.*, *Olwin Metal Fabrication LLC v. MultiCam, Inc.*, No. 3:22-CV-333-WHR-PBS, 2023 WL 6319283, at *3 (S.D. Ohio Sept. 28, 2023) (Rice, J.) (declining to dismiss breach-of-contract claim when plaintiff cited to "three [unmet] technical benchmarks of performance" because the pleading "cover[ed] the relevant terms of the ... agreement, how the agreement was breached, and how the breach harmed [it]" (citation modified)); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 958 (N.D. Ohio 2009) (denying motion to dismiss express warranty claim challenging specificity of plaintiff's allegations of product defect), *as amended* (Nov. 4, 2009).

OEC India also asserts that Terms and Conditions foreclose the express-warranty claims. (Mot., PAGEID # 458 (citing Del. Code tit. 6, § 2-316).) Section 11 states, in pertinent part, that "[OEC India] warrants that the Products will perform substantially in accordance with [OEC India's] published specifications (or other applicable specifications as agreed upon in writing by [OEC India]) and will be free

from defects in material and workmanship[.]" (*See* ECF No. 1-1.) OEC India points to the sentence immediately following this language, which provides a disclaimer that "[n]o other warranty, whether expressed or implied, shall exist in connection with the sale or use of any OEC products." (*Id.*)

Again, only six of the Order Confirmations contain Section 11's disclaimer. Regardless, the argument is unpersuasive because ATP is not suing under any express warranties other than the warranty that OEC India's products would conform to its published specifications and be free from defects in material and workmanship. Reading the disclaimer to eliminate the warranty created in the immediately preceding sentence would render that warranty meaningless. *See, e.g., Norcold, Inc. v. Gateway Supply Co.*, No. 17-05-11, 2006 WL 3802609, at *9–10 (Ohio Ct. App. Dec. 28, 2006) (holding that language disclaiming all other warranties limited the seller's warranty to the written warranty against defects in materials and workmanship but did not negate that written warranty).

Accordingly, the Motion is **DENIED** as to ATP's claims for breach of contrct and breach of express warranty against OEC India (Counts I through IV).

### 3. Breach of Implied Warranties (Counts V–VIII)

ATP invokes implied warranties along with its express-warranty claims—namely, the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. (*See* Compl. ¶¶ 90–114 (citing Delaware and Ohio UCC provisions).) Ohio and Delaware impose materially the same requirements for those implied warranties. *Compare* Ohio Rev. Code §§ 1302.27–29 *with* Del. Code

Ann. tit. 6, §§ 2-314–16. Because the jurisdictions would reach the same result, the Court applies Ohio law.

A warranty that goods shall be merchantable is implied in a contract for their sale when the seller is a merchant with respect to goods of that kind. Ohio Rev. Code § 1302.27(A). As relevant here, merchantable goods must "pass without objection in the trade under the contract description" and be "fit for the ordinary purposes for which such goods are used." *Id.* §§ 1302.27(B)(1), (3). To state a claim for breach of the implied warranty of merchantability, a plaintiff must plausibly allege, among other things, that the seller was a merchant and that the goods were not "merchantable" at the time purchased—that is, not fit for their ordinary intended use. *See Nessle v. Whirlpool Corp.*, No. 1:07CV3009, 2008 WL 2967703, at *4 (N.D. Ohio July 25, 2008) (citation omitted).

ATP plausibly alleges that OEC India is a merchant with respect to tubing products, that it sold tubing intended for use in air-brake systems, and that the tubing failed to comply with SAE Specification J844 and 49 C.F.R. § 571.106. (Compl. ¶¶ 3–8, 42–50, 90–102.) ATP further alleges that it notified OEC India of the noncompliance and incurred damages. (*Id.* ¶¶ 49–61, 96–102.) Taken as true, those facts are sufficient at this stage to permit the reasonable inference that the tubing products were unfit for their use in air-brake systems. *See, e.g.*, *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.,* 654 F App'x 80, 99–101 (3d Cir. 2016) (applying Ohio law and holding that allegations identifying defective components, testing

results, and resulting customer-service obligations plausibly alleged unmerchantability without needing to identify every product by serial number).

Turning to the implied warranty of fitness for a particular purpose, that warranty arises when, at the time of contracting, the seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods[.]" Ohio Rev. Code § 1302.28. "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business[.]" *Id.*, Official Comm. 2. To state a claim for breach of implied warranty of fitness for a particular purpose, a plaintiff must allege that (1) the seller had reason to know the buyer's particular purpose; (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer in fact relied upon the seller's skill or judgment. *Leen v. Wright Med. Tech., Inc.*, No. 3:15-CV-125, 2015 WL 5545064, at *2 (S.D. Ohio Sept. 18, 2015) (Rice, J.) (quoting *Hollingsworth v. Software House, Inc.*, 513 N.E.2d 1372, 1376 (Ohio Ct. App. 1986)).

In this case, ATP alleges a particular purpose—namely, it required tubing products suitable for resale and incorporation into regulated air-brake systems in the United States and capable of satisfying SAE J844 and FMVSS 106. (*See* Compl. ¶¶ 3, 57, 104.) ATP further pleads that OEC India knew of that purpose and knew that ATP relied on OEC India's expertise as the manufacturer to furnish compliant tubing products. (*Id.* ¶¶ 3–7, 42, 104–05, 120.) And ATP alleges that the tubing

products were not suitable for that purpose and that the resulting noncompliance caused damages. (*Id.* ¶¶ 106–11.) Thus, ATP has plausibly alleged the creation and breach of an implied warranty of fitness for a particular purpose. *See, e.g.*, *Antero Resources Corp. v. Tejas Tubular Products, Inc.,* 610 F. Supp. 3d 1047, 1064–65 (S.D. Ohio 2022) (Morrison, J.) (finding implied warranty of fitness for particular purposes was created where manufacturer knew that casing would be specifically used in high-pressure hydraulic-fracturing wells, that casing had to satisfy a specified industry standard, and that the buyer relied on the manufacturer to provide compliant casing).

The Court is not persuaded by OEC India's argument that Section 11's disclaimer requires dismissal of the claims alleging implied warranty of fitness for a particular purpose. (Mot., PAGEID # 458; Reply, PAGEID # 1066.) That disclaimer appears only in six Order Confirmations. (*See* ECF No. 1-1.) As explained above, the Court cannot determine, at this stage, the extent to which the other Order Confirmations incorporate Section 11's terms.

As to the six Order Confirmations containing Section 11, "[t]o exclude or modify any implied warranty of fitness[,] the exclusion must be by a writing and conspicuous." Ohio Rev. Code § 1302.29(B). "Conspicuous" means "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." *Id.* § 1301.201(B)(10). Conspicuous terms may include a heading or language in the body of a document that is capitalized or in larger or contrasting type or font. *Id.* Whether a term is conspicuous is a decision for the

court. *Id.*; *see, e.g.*, *Univ. Hosps. Health Sys., Inc. v. Pohl Inc. of Am.*, 358 F. Supp. 3d 658, 663 (N.D. Ohio 2019) (citing cases).

Recall that Section 11 states that "[n]o other warranty, whether expressed or implied, shall exist in connection with the sale or use of any OEC products." (ECF No. 1-1.) Although Section 11 is introduced by way of the word "Warranty" in bolded font, the provision is a paragraph composed of seven sentences of the same type, color, and font, and the above-quoted language appears in the middle of the paragraph as the second sentence. (*See id.*) Nowhere does the paragraph explicitly or particularly reference the warranty of fitness. *Cf. Battelle Mem'l Inst. v. Nowsco Pipeline Servs., Inc.*, 56 F. Supp. 2d 944, 953 (S.D. Ohio 1999) (Marbley, J.) ("This exclusion specifically mentions the warranties of merchantability and fitness and, written in all capital letters, is conspicuous."). The Court finds that the language of the disclaimer here is not conspicuous so as to exclude the implied warranty of fitness for a particular purpose.

OEC India's Motion as to ATP's implied-warranty claims (Counts V through VIII) is **DENIED**.

#### 4. Fraudulent Inducement (Count IX)

ATP finally brings a claim for fraudulent inducement. (Compl. ¶¶ 115–23.) Unlike ATP's contract and warranty claims, which the Court evaluates using Rule 8's pleading standards, ATP's fraudulent-inducement claim must satisfy Rule 9(b)'s heightened particularity requirement. *See Stratesphere LLC v. Kognetics Inc.*, No. 2:20-CV-2972, 2021 WL 11457420, at *2 (S.D. Ohio May 4, 2021) (Watson, J.) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012)).

The elements of a claim for fraudulent inducement are (1) a representation, (2) material to the transaction, (3) which is made falsely, with knowledge of its falsity or with utter disregard and recklessness as to its falsity, (4) intent to mislead, (5) justifiable reliance on the representation, and (6) a resulting injury. *Delphi Automotive, Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 386 (6th Cir. 2011) (internal quotation and citation omitted). To plead fraudulent inducement with sufficient particularity, ATP must allege the time, place, and content of the alleged misrepresentation on which it relied; the fraudulent scheme; the fraudulent intent of OEC India; and the injury resulting from the fraud. *Stratesphere LLC*, 2021 WL 11457420, at *2 (citation omitted).

The Complaint in this case does not adequately plead the "who, what, when, where, and how" of the alleged fraud. ATP repeatedly alleges that "[a]t all relevant times," OEC misrepresented "on its website and to ATP" that "its tubing products met the applicable standards in the United States for use in air brake systems." (*See* Compl. ¶¶ 3, 41, 42, 115.) But ATP does not, for instance, identify who at OEC India made the misrepresentations or at what point during the "relevant time" those misrepresentations were conveyed. Similarly, the Complaint does not allege when ATP viewed the representation on OEC India's website, who at ATP viewed it, or how that statement induced a particular purchase. These omissions matter because Rule 9(b) requires more than a general allegation that a defendant misrepresented compliance during a commercial relationship. *See, e.g.*, *Greer v. Strange Honey Farm, LLC,* 114 F.4th 605, 614–15 (6th Cir. 2024) (affirming

dismissal where general allegations concerning allegedly false product labels failed to explain why the representations were false or identify when they were made); *cf. NexTech Materials, Ltd. v. Proof Energy, Inc.*, No. 2:21-cv-4337, 2022 WL 847295, at *3–4 (S.D. Ohio Mar. 22, 2022) (Morrison, J.) (pleading identified representations made during a defined negotiation period, the individuals who made them, and the content of the alleged statements).

ATP's allegations as to OEC India's knowledge are also insufficient. Rule 9(b) "permits general allegations about the defendant's knowledge to avoid a 12(b)(6) motion to dismiss." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 883 (6th Cir. 2021). Although Rule 9(b) does not require "knowledge" to be alleged with particularity, ATP is required to allege facts sufficient to plausibly show OEC India's knowledge or recklessness. Instead, ATP merely contends, on information and belief, that OEC India knew the compliance representations were false or acted with "utter disregard or recklessness" for their truth. (Compl. ¶ 118.) Those conclusory allegations largely track the elements of fraudulent inducement—they do not assert facts leading to the inference that OEC India exhibited fraudulent intent. *See U.S. ex rel. Holbrook v. Brink's Co.,* No. 2:13-CV-873, 2015 WL 196424, at *7 (S.D. Ohio Jan. 15, 2015) (Marbley, J.) ("[U]nder Rule 9(b), Plaintiffs may plead fraud based 'upon information and belief,' but the complaint 'must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" (quoting *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006))).

ATP's fraudulent-inducement claim does not satisfy Rule 9(b). Consequently, Defendants' Motion is **GRANTED** as to this claim (Count IX).

## V. CONCLUSION

For the reasons above, Defendants' Motion to Dismiss (ECF No. 21) is **GRANTED in part** and **DENIED in part.**

The Motion is **DENIED** as to OEC India's request for dismissal under Rule 12(b)(2). The Motion is **GRANTED** as to OEC USA's request for dismissal under Rule 12(b)(2), and OEC USA is **DISMISSED without prejudice.**

The Motion is **DENIED** as to OEC India's request for dismissal under the doctrine of *forum non conveniens*.

The Motion is **GRANTED** as to OEC India's request for dismissal under Rule 12(b)(6) of ATP's fraudulent inducement claim (Count IX), and that claim is **DISMISSED**. The Motion is also **GRANTED** as to ATP's remaining claims based on the six Order Confirmations containing Section 13 (Counts I, III, V, and VII), and those claims are **DISMISSED** insofar as they seek damages or remedies beyond that provision's scope.

The Motion is **DENIED** as to ATP's breach-of-contract claims (Counts I and II), express-warranty claims (Counts III and IV), and implied-warranty claims (Counts V–VIII).

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**